[No. 64345-2-I.   Division One.   November 1, 2010.]

JAN AHTEN, *Appellant*, v. BRADLEY J. BARNES, *Respondent*.

---

[14] 117 Wn.2d 37, 53, 811 P.2d 673 (1991).

*Stephen P. Hennessey* (of *Durkee & Hennessey*), for appellant.

*Catherine G. Noonan* (of *Noonan Law Firm PLLC*), for respondent.

¶1 LAU, J. — The registration of contractors act, chapter 18.27 RCW, requires Washington contractors to register and file a surety bond with the Department of Labor and Industries (Department). RCW 18.27.040 provides a mechanism for consumers, subcontractors, and others to recover against the bond, and requires those parties to serve three copies of the summons and complaint on the Department. RCW 18.27.040(3). Homeowner Jan Ahten sued her contractor John Barnes and Western Surety Company to recover against the contractor's bond. In the

same complaint, she also sought breach of contract damages against Barnes personally. Ahten served the Department but not Barnes. Ahten then obtained a $250,831 default judgment against Barnes on the breach of contract claim. The trial court vacated the default judgment on improper service and lack of personal jurisdiction grounds after Barnes learned about the default judgment and moved for relief. Ahten argues that she properly served Barnes through the substituted service provision in RCW 18.27.040(3). But because this provision applies only to an action against a contractor and its bond to recover against the bond, we affirm vacation of the default judgment.

## FACTS

¶2  Jan Ahten owns a home in Bellevue, Washington, and began a remodel project in 2007. She hired contractor John Bradley Barnes to assist her. The parties signed no written agreement. Barnes was a licensed contractor, and he obtained a $12,000 bond as required by RCW 18.27.040 from Western Surety Company.

¶3  Barnes began work on August 23, 2007. Ahten concedes she knew Barnes planned to go to Louisiana in December 2007, but she claimed she did not know he planned a permanent move. Barnes billed Ahten for the following remodel work performed by his employees between September and December 2007:

> Save shrubs. Move House. Grading. Demolition. Chimney removal. Roof Removal. Garage Removal. Foundation footing cleanup. Dry rot removal & repair. Concrete removal. Wall removal & clean up. Install water & power conduits. Install gas conduit. Back fill & compaction site clean up. Assist in framing. Remove stairs.

¶4  Barnes and his crew removed the roof in November 2007. According to Barnes, he and the framing and roofing contractor, Francisco Flores, tried to impress on Ahten the importance of completing the roof work prior to winter. Ahten agreed and Flores began installing roof trusses.

¶5 On December 13, 2007, Barnes moved to Louisiana. While Barnes was driving to Louisiana, Flores called Barnes. Flores said that after he had completed approximately 70 percent of the roof work, Ahten ordered everyone off the work site.

¶6 Around December 22, 2007, Ahten's sister, Jen Harrington, called Barnes. According to Barnes, Jen said that she and her brother, Herb Ahten,[1] " 'had to remove [Ahten] from the loop and that they were going to take the job over.' " Barnes returned to Seattle for the holidays. Barnes met with Jen and Herb on January 1, 2008. Ahten authorized Jen and Herb to make all decisions regarding the project. Jen and Herb gave Barnes new plans for the house. By letter dated January 1, 2008, Ahten offered to pay Barnes $60/hour for the additional work.

¶7 In early January 2008, Flores demolished the previous work done on the second floor and the roof in accordance with the new plans. Barnes assisted with the cleanup. On January 10, Herb and Jen dismissed Barnes from the project.

¶8 On June 19, 2008, Ahten filed a complaint in King County Superior Court against Barnes for breach of contract and Western Surety Company to recover against the bond. She sought damages from Barnes "known to be not less than $50,000." The complaint did not specify how Barnes had breached "a series of contracts" or caused the damages she alleged. While Ahten served the summons and complaint on the Department, she failed to serve Barnes personally. The surety paid to Ahten the $12,000 bond amount and is not involved in this appeal. When Barnes failed to answer or appear, Ahten moved for a default judgment against him on September 4, 2008, alleging that he owed her a sum certain. Her declaration asserted that Barnes had removed the roof, causing damage to the home's interior during winter. That same day, the court granted a

---

[1] For clarity, we use Jen and Herb's first names.

$250,831 default judgment against Barnes personally. Barnes learned about the suit sometime in October 2008.

¶9 Barnes moved to set aside the default judgment on August 25, 2009. In its October 2, 2009 order granting the motion and setting aside the default, the trial court reasoned,

And the Court having researched the legislative history of substitute Senate Bill 5101 passed in 2001 and substitute House Bill 1843 passed in 2007; both bills were requested by the Dept. of Labor and Industries and it being clear that there was no intent by the Legislature to confer personal jurisdiction on the contractor by service on the department except for actions against the bond or deposit of the contractor; therefore the motion to vacate the default judgment dated September 4, 2009 is denied in part, as to the portion of the judgment paid by Western Surety Company on Bond No. 69229231. The motion to vacate is granted as to the judgment amount in excess of the amount of the funds available through the aforesaid Bond. Because the motion is granted in part and denied in part, no attorney fees or costs are awarded to either party.

Ahten appeals.

## DISCUSSION

¶10 Ahten argues that the trial court erred in setting aside the default judgment because a plain reading of RCW 18.27.040(3)[2] allows a homeowner to serve the summons

---

[2] RCW 18.27.040(3) provides, "Any person, firm, or corporation having a claim *against the contractor for any of the items referred to in this section may bring suit against the contractor and the bond or deposit in the superior court* of the county in which the work was done or of any county in which jurisdiction of the contractor may be had. The surety issuing the bond shall be named as a party to any suit upon the bond. *Action upon the bond or deposit brought by a residential homeowner for breach of contract by a party to the construction contract shall be commenced by filing the summons and complaint with* the clerk of the appropriate superior court within two years from the date the claimed contract work was substantially completed or abandoned, whichever occurred first. Action upon the bond or deposit brought by any other authorized party shall be commenced by filing the summons and complaint with the clerk of the appropriate superior court within one year from the date the claimed labor was performed and benefits accrued, taxes and contributions owing the state of Washington became due,

and complaint only on the Department in an action against a contractor and its bond. She claims personal service of the summons and complaint on the contractor is not required under this statute. Ahten also argues that the legislature intended to amend the statute in 2007 to permit substituted service on the Department by inserting the phrase "and confer personal jurisdiction."[3] She further claims the statute is unambiguous and therefore the trial court's reliance on legislative history constitutes error.

¶11 Barnes responds that RCW 18.27.040(3)'s substituted service provision applies only to actions on the contractor's bond, not to actions against contractors personally. And he also argues this interpretation is supported by the 2007 statute amendment, the statute's purpose and legislative history, and case law precedent.

*Standard of Review*

¶12 "Proper service of the summons and complaint is essential to invoke personal jurisdiction over a party, and a default judgment entered without proper jurisdiction is void." *In re Marriage of Markowski*, 50 Wn. App. 633,

---

materials and equipment were furnished, or the claimed contract work was substantially completed or abandoned, whichever occurred first. *Service of process in an action filed under this chapter against the contractor and the contractor's bond or the deposit shall be exclusively by service upon the department.* Three copies of the summons and complaint and a fee adopted by rule of not less than fifty dollars to cover the costs shall be served by registered or certified mail, or other delivery service requiring notice of receipt, upon the department at the time suit is started and the department shall maintain a record, available for public inspection, of all suits so commenced. Service is not complete until the department receives the fee and three copies of the summons and complaint. *The service shall constitute service and confer personal jurisdiction on the contractor and the surety for suit on claimant's claim against the contractor and the bond or deposit and the* department shall transmit the summons and complaint or a copy thereof to the contractor at the address listed in the contractor's application and to the surety within two days after it shall have been received." (Emphasis added.)

[3] The legislature made the following 2007 changes to the relevant portion of the statute: "Service of process in an action *filed under this chapter* against the contractor((,)) *and* the contractor's bond((,)) or the deposit shall be exclusively by service upon the department. . . . The service shall constitute service *and confer personal jurisdiction* on the ((registrant)) *contractor* and the surety for suit ((upon the)) *on claimant's claim against the contractor and the* bond or deposit . . . ." Laws of 2007, ch. 436, § 4(3) (amending RCW 18.27.040).

635-36, 749 P.2d 754 (1988). "Because courts have a mandatory, nondiscretionary duty to vacate void judgments, a trial court's decision to grant or deny a CR 60(b) motion to vacate a default judgment for want of jurisdiction is reviewed de novo."[4] *Dobbins v. Mendoza*, 88 Wn. App. 862, 871, 947 P.2d 1229 (1997).

¶13 There is no time limit to bring a motion to vacate a default judgment that is void. *Markowski*, 50 Wn. App. at 635 ("Motions to vacate under CR 60(b)(5) may be brought at any time after entry of judgment." (footnote omitted)); *Allstate Ins. Co. v. Khani*, 75 Wn. App. 317, 323-24, 877 P.2d 724 (1994) ("Void judgments may be vacated regardless of the lapse of time.").

*Overview of Chapter 18.27 RCW*

¶14 Chapter 18.27 RCW is the contractor's registration statute. The statute's statement of legislative finding declares,

> [U]nregistered contractors are a serious threat to the general public and are costing the state millions of dollars each year in lost revenue. To assist in solving this problem, the department of labor and industries and the department of revenue should coordinate and communicate with each other to identify unregistered contractors.

LAWS OF 1993, ch. 454, § 1. Its overall purpose is "to afford protection to the public including all persons, firms, and corporations furnishing labor, materials, or equipment to a contractor from unreliable, fraudulent, financially irresponsible, or incompetent contractors." RCW 18.27.140.

¶15 To this end, the registration statute requires every contractor in Washington to register with the Department. RCW 18.27.010(2), .020(1). And to perform work as an unregistered contractor is punishable as a criminal gross misdemeanor offense. RCW 18.27.020(2)(a). RCW 18.27.385,

---

[4] Barnes contends the standard of review is for an abuse of discretion. We disagree. And we review findings of fact under a substantial evidence standard. *Clayton v. Wilson*, 168 Wn.2d 57, 227 P.3d 278 (2010).

entitled "Marketing campaign," requires the Department to create a campaign aimed at consumers and warn them about the risks and consequences of hiring unregistered contractors. RCW 18.27.390(1) declares, "The legislature finds that it is contrary to public policy to allow unregistered contractors to continue doing business illegally." Subsection 2 of this provision requires the Department, the Employment Security Department, and the Department of Revenue to establish an "unregistered contractors enforcement team" with the statewide enforcement goal of enforcing the registration of contractors act.

¶16 RCW 18.27.040, the section of the statute at issue here, is entitled "Bond or other security required—Actions against—Suspension of registration upon impairment." It requires applicant contractors to file with the Department a surety bond issued by an acceptable surety insurer in the amount of $12,000 for general contractors and $6,000 for specialty contractors. RCW 18.27.040(1). The bond must be conditioned that the applicant will pay all persons performing labor, including employee benefits; all taxes and other contributions due the State; all persons furnishing materials or equipment; and all amounts adjudged against the contractor by reason of breach of contract, including improper work in the conduct of the contracting business. RCW 18.27.040(1). "RCW 18.27.040(3) allows parties having a claim to bring suit against the bond. The statute recites filing requirements, statutes of limitations, *and service requirements specifically for suits against the bond.* RCW 18.27.040(3)." *Cosmopolitan Eng'g Grp., Inc. v. Ondeo Degremont, Inc.*, 159 Wn.2d 292, 297, 149 P.3d 666 (2006) (emphasis added).

¶17 RCW 18.27.040(4) provides that the bond surety shall not be liable in an aggregate amount in excess of the amount named in the bond. It also sets forth the priority of payment when the claims against the bond exceed the bond amount. RCW 18.27.040(5) establishes bond amounts that must be reserved for residential homeowners. And RCW 18.27.040's remaining sections allow the Department to

suspend registration of a contractor where the bond no longer meets the required amount and to increase the amount of the bond required for contractors with several previous judgments against them. RCW 18.27.040(7)-(11). Finally, RCW 18.27.040(12) confers on the director rule making authority "necessary for the proper administration of the security."

### Statutory Interpretation

■ ¶18

Our purpose when interpreting a statute is to " 'discern and implement the intent of the legislature.' " [*City of Olympia v. Drebick*, 156 Wn.2d 289, 295, 126 P.3d 802 (2006)] (quoting *State v. J.P.*, 149 Wn.2d 444, 450, 69 P.3d 318 (2003)). Where the meaning of statutory language is plain on its face, we must give effect to that plain meaning as an expression of legislative intent. [*Drebick*, 156 Wn.2d at 295]. In discerning the plain meaning of a provision, we consider the entire statute in which the provision is found as well as related statutes or other provisions in the same act that disclose legislative intent. [*Drebick*, 156 Wn.2d at 295]; *Advanced Silicon Materials, LLC v. Grant County*, 156 Wn.2d 84, 89-90, 124 P.3d 294 (2005); *Ellerman v. Centerpoint Prepress, Inc.*, 143 Wn.2d 514, 519, 22 P.3d 795 (2001). When a statute is ambiguous, we then resort to aids of construction, including legislative history. [*Drebick*], 156 Wn.2d at 295; *Advanced Silicon*, 156 Wn.2d at 90.

*Cosmopolitan*, 159 Wn.2d at 298-99.

■■ ¶19 We first review the language of the provision in question. The service provision relied on by Ahten provides, "Service of process in an action *filed under this chapter* against the contractor *and*[5] the contractor's bond or the deposit shall be exclusively by service upon the

---

[5] "And" conveys a conjunctive meaning, otherwise the legislature would have used "or" if it meant to convey a disjunctive meaning. *Ski Acres, Inc. v. Kittitas County*, 118 Wn.2d 852, 857, 827 P.2d 1000 (1992). To achieve the meaning urged by Ahten requires us to rewrite this provision by replacing the word "and" with the word "or"—"Service of process in an action filed under this chapter against the contractor [*or*] the contractor's bond or the deposit shall be exclusively by service upon the department." RCW 18.27.040(3). We decline to read "or" into this provision.

department." RCW 18.27.040(3) (emphasis added). This provision refers to an action filed against the contractor *and* contractor's bond or deposit but limits the provision's application to actions *filed under this chapter*. *See Cosmopolitan*, 159 Wn.2d at 299.

¶20 Review of chapter 18.27 RCW, and in particular RCW 18.27.040 in its entirety, evidences the legislature's intent that actions "filed under this chapter" refer only to actions for recovery against the contractor's bond. Various subsections of RCW 18.27.040 expressly refer or relate to suits against the bond. For example, RCW 18.27.040(3), at issue here, provides in part, "Any person, firm, or corporation having a claim against the contractor for any of the items . . . may bring suit upon the contractor *and the bond* or deposit. . . . Action upon the *bond* or deposit brought by any other authorized party . . . ." (Emphasis added.) And RCW 18.27.040(6) provides in part, "The prevailing party in an action filed under this section against the contractor and contractor's *bond* or deposit . . . is entitled to costs, interest, and reasonable attorneys' fees." (Emphasis added.) We conclude that nothing in chapter 18.27 RCW, and section .040 specifically, suggests that the legislature intended to address actions against contractors.

¶21 And three Washington cases consistently interpreted the statute as applying only to actions against a contractor's bond. For example, in *Mid-City Materials, Inc. v. Heater Beaters Custom Fireplaces*, 36 Wn. App. 480, 482, 674 P.2d 1271 (1984), Mid-City brought an action under RCW 18.27.040 on an overdue note against Heater Beaters, its surety, operators (Richard and Ann Murchison), and Richard's parents (Fred and Ethel Murchison). Mid-City claimed that all four Murchisons were partners in Heater Beaters. Mid-City obtained default judgments against all except the surety. The parents moved unsuccessfully to vacate the default judgment because they were not person-

ally served.[6] Like here, Mid-City served only the Department. We held that because "the trial court had not acquired in personam jurisdiction over the parents by proper service of process on them, the trial court erred when it declined to vacate the default judgment against the parents." *Mid-City Materials*, 36 Wn. App. at 483. We reasoned that "[t]he service provisions of the statute are clearly and specifically limited by the language of the statute to suits brought on the bond." *Mid-City Materials*, 36 Wn. App. at 484.

¶22 In *Subcontractors & Suppliers Collection Services v. McConnachie*, 106 Wn. App. 738, 24 P.3d 1112 (2001), Division Three of this court came to a similar conclusion. There, the collection service served the Department to effect service in a lawsuit against contractor McConnachie and its bond to collect on an unpaid bill for materials. But service occurred after the statute of limitations had run against the bonding company. The question therefore was whether service pursuant to RCW 18.27.040 conferred personal jurisdiction over McConnachie for debt not covered by the bond. Like Ahten, the collection service argued that the court had "personal jurisdiction over Mr. McConnachie because the clear language of the statute [RCW 18.27-.040(3)] says so." *McConnachie*, 106 Wn. App. at 741. After examining the entire legislative scheme and the statute's title, the court concluded that RCW 18.27.040 "spells out the requirements for realizing on a *construction bond*, including effecting service." *McConnachie*, 106 Wn. App. at 741. While RCW 18.27.040(3) included language referring to an action against "the contractor, the contractor's bond, or the deposit," the court held that RCW 18.27.040 applied to suits against the bond and RCW 18.27.040(3)'s service provisions therefore applied only to actions against the bond or deposit.[7] The court also observed that "RCW

---

[6] Mid-City obtained a default judgment against the parents for $15,091.89. The bond required at that time was $4,000.00.

[7] In so holding, *McConnachie* cited with approval *Mid-City*: "the overall focus of RCW 18.27.040(3) remains the contractor's bond and deposit. Our reading of the whole statute convinces us that *Mid-City* remains good law." (Citations omitted.)

18.27.040 is entitled: *'Bond or other security required—Actions against*—Suspension of registration upon impairment.'[8] The title of RCW 18.27.040 states it is applicable to actions against the contractor's bond or other security. The title does not say actions against contractors in general." *McConnachie*, 106 Wn. App. at 743.

¶23 Finally, our Supreme Court reached a similar conclusion about the statute's scope in a dispute over the attorney fees provision, RCW 18.27.040(6).[9] In *Cosmopolitan*, subcontractor Cosmopolitan sued contractor Ondeo for unpaid work. It also sought recovery from National Fire Insurance Company to the extent of Ondeo's surety bond. The jury returned a $100,420 verdict in favor of Cosmopolitan. Cosmopolitan then sought attorney fees under RCW 18.27.040(6), which provides attorney fees to the " 'prevailing party in an action filed under this section against the contractor and contractor's bond or deposit . . . .' " *Cosmopolitan*, 159 Wn.2d at 295 (emphasis omitted) (quoting RCW 18.27.040(6)). It argued that this provision allowed recovery of attorney fees in actions against contractors and in actions against their bonds. The Court of Appeals held that as the prevailing party, Cosmopolitan was entitled to fees against both the opposing contractor and its bond. But the Supreme Court reversed, holding that the trial court had correctly limited Cosmopolitan's attorney fees only to the amount available under the bond.[10]

¶24 The Supreme Court first reviewed the attorney fees provision at issue. It concluded that this provision "refers to an action filed against the contractor *and* contractor's bond or deposit, but limits the application of the provision to

---

[8] The current version of RCW 18.27.040 retains this title without change.

[9] We note that the attorney fees provision at issue in *Cosmopolitan* is nearly identical to the 2007 amendment at issue here in its use of the phrase "against the contractor and the bond."

[10] RCW 18.27.040(5) reserves one-half of the bond amount for residential homeowners.

actions *'filed under this section.'* " *Cosmopolitan*, 159 Wn.2d at 299 (quoting RCW 18.27.040(6)). The court then reviewed the entirety of RCW 18.27.040 and concluded that "filed under this section" refers only to actions for recovery against the bonds. And RCW 18.27.040's various subsections support this interpretation because they expressly refer or relate to suits against the bond. The court further reasoned, "Nothing in these surrounding subsections [RCW 18.27.040(3)-(5)] suggests that the legislature intended to discuss actions against the contractors." *Cosmopolitan*, 159 Wn.2d at 299.

¶25 The Supreme Court then cited with approval *McConnachie.*

> The *McConnachie* decision interpreted RCW 18.27.040(3) before the legislature's 2001 amendments to the statute added the attorney fee provision at issue here, but nothing in the 2001 amendments shifts the focus of RCW 18.27.040 away from the contractor's bond. The *McConnachie* court's reasoning applies equally here; considering the context of the overall legislative scheme, the statute as a whole spells out the requirements and conditions for realizing on a contractor's bond.

*Cosmopolitan*, 159 Wn.2d at 300.

### 2007 Amendment to RCW 18.27.040

¶26 Ahten argues that 2007 amendments to the statute demonstrate the legislature's intent to allow substituted service for actions personally against a contractor. She relies specifically on the phrase "and confers personal jurisdiction."

¶27 In *Mid-City, McConnachie*, and *Cosmopolitan*, the courts interpreted RCW 18.27.040 before the legislature added the language "and confer personal jurisdiction" in 2007 ("The service shall constitute service *and confer personal jurisdiction* on the ((registrant)) *contractor* and the surety for suit ((upon the)) *on claimant's claim against the*

*contractor and the* bond or deposit . . . ."). LAWS OF 2007, ch. 436, § 4. But as *Cosmopolitan* noted, "[A]n action against the bond must also necessarily claim that a contractor breached a contract or failed to pay. This need to establish underlying contractor liability explains the legislature's reference to '*an* action filed under this chapter against the contractor *and* contractor's bond or the deposit.' " *Cosmopolitan*, 159 Wn.2d at 300-01 (quoting RCW 18.27.040(6)).

> Had the legislature intended to authorize attorney fees for prevailing parties both in actions against contractors and in actions against the bond, the legislature could have referred to multiple actions or made it clear that fees were warranted either in an action against the contractor *or* in an action against the contractor's bond.

*Cosmopolitan*, 159 Wn.2d at 301. This reasoning applies equally here.

¶28 Ahten next argues that the 2007 statutory amendment impliedly overrules *Mid-City*, *McConnachie*, and *Cosmopolitan*. We disagree. "In construing legislation, [courts] presume the Legislature is familiar with past judicial interpretation of its enactments." *Glass v. Stahl Specialty Co.*, 97 Wn.2d 880, 887, 652 P.2d 948 (1982). "Absent an indication that the Legislature intended to overrule the common law, new legislation will be presumed to be consistent with prior judicial decisions." *In re Marriage of Williams*, 115 Wn.2d 202, 208, 796 P.2d 421 (1990). We will not assume that the legislature would affect a significant change in legislative policy by mere implication. *In re Marriage of Little*, 96 Wn.2d 183, 191, 634 P.2d 498 (1981). Ahten points to nothing in RCW 18.27.040's legislative history that demonstrates legislative intent to overrule the common law.

¶29 Furthermore, that the legislature removed the commas between "contractor" and "contractor's bond" makes the legislature's intent even more clear ("Service of process in an action *filed under this chapter* against the

contractor((,)) *and* the contractor's bond((,)) or the deposit shall be exclusively by service upon the department. . . ."). Laws of 2007, ch. 436, § 4(3). Because the word "and" replaces the comma between "contractor" and "contractor's bond," the statute more clearly expresses the legislative intent that a claim under this chapter must involve the bond. *See supra* note 5.

¶30 And had the legislature intended RCW 18.27.040(3)'s substitute service provision to apply to actions against contractors, it could have done so more explicitly by not inserting the words "and confer personal jurisdiction" in a statutory section dealing *entirely* with suits against contractors' bonds. *See Cosmopolitan,* 159 Wn.2d at 306.

¶31 Even if the legislature's reference to a suit against the contractor and the bond renders the provision ambiguous, aids of statutory construction—including legislative history—require the same conclusion. Our review of the legislative history relating to the 2007 amendment reveals nothing indicating that the legislature intended a significant change in the statute's scope that would support Ahten's reading. And Ahten points to no legislative history that supports her interpretation.[11] Without clear expression of legislative intent, and because substituted service of process implicates fundamental due process concerns, we decline to interpret 2007 amendments to RCW 18.27.040(3) as significantly expanding the statute's scope to include not only actions against the bond, but all actions against contractors.

¶32 Finally, Ahten contends that adopting her interpretation of RCW 18.27.040(3) would advance the statute's stated purposes to protect prevailing homeowners, subcontractors, and suppliers from unregistered contractors. But the context of the statutory scheme is important. We agree with *Cosmopolitan*'s reasoning.

---

[11] At oral argument, Ahten's counsel acknowledged that the legislative history does not aid her construction. Notably, Ahten contends that because the statute is unambiguous, reliance on legislative history is improper.

While contractor registration in general, and bond requirements in particular, are obviously intended to protect the public from irresponsible contractors, this purpose should not necessarily be used to extend the protections beyond the mechanisms expressly provided for in the relevant statute. . . . Had the legislature intended the attorney fee provision to apply to more than suits against the bond, it could have located the attorney fee provision elsewhere in the statutory scheme. . . . After considering the entire context of RCW 18.27.040, it seems clear that the legislature intended subsection (6)'s attorney fee provision to be limited to actions against the bond.

*Cosmopolitan*, 159 Wn.2d at 302.

*Attorney Fees*

¶33 Barnes requests attorney fees, citing RCW 18.27.040(6) which entitles the prevailing party in a suit under the registration of contractors act to attorney fees. But the claim at issue here is not one under chapter 18.27 RCW to recover against a bond. Rather, it is a judgment against Barnes for breach of contract. Because this statute does not apply, Barnes is not entitled to attorney fees.

## CONCLUSION

¶34 Considering RCW 18.27.040 in its entirety, the context of related subsections, legislative history, and case law precedent, we hold that RCW 18.27.040(3)'s substituted service provision applies only to actions against a contractor and its bond to recover against the bond under the circumstances presented here. Accordingly, we affirm the trial court's order vacating the default judgment against Barnes.

DWYER, C.J., and SCHINDLER, J., concur.