# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| NATALIE SUTEY and JOHN SUTEY, husband and wife, | No. 79510-4-I |
| Respondents, | DIVISION ONE |
| v. | PUBLISHED OPINION |
| T26 CORPORATION, a Washington corporation; WILLIAM SECHTER and JANE DOE SECHTER, husband and wife, and the marital community composed thereof; MARC WILABY and JANE DOE WILABY, husband and wife, and the marital community composed thereof; ALAN WINNINGHAM and JANE DOE WINNINGHAM, husband and wife, and the marital community composed thereof; MICHAEL VISSE and JANE DOE VISSE, husband and wife, and the marital community composed thereof, | |
| Defendants, | |
| ANTHONY BERGIN and JANE DOE BERGIN, husband and wife, and the marital community composed thereof, | |
| Appellant. | |

APPELWICK, J. — In August 2015, the Suteys obtained a default judgment against Bergin. In August 2018, the Suteys sought a writ of garnishment. Bergin filed a motion to vacate the order of default and default judgment under CR 60(b) and to quash the writ of garnishment. The trial court denied his motion and

awarded the Suteys attorney fees. Bergin argues that the default judgment is void because he was not properly served with the summons in this case. He also contends that the Suteys made misrepresentations to the trial court regarding service of the summons and complaint, allowing them to procure the judgment through fraud. Last, he asserts that the trial court abused its discretion in awarding the Suteys attorney fees for defending the motion to vacate. We affirm.

FACTS

In October 2009, Anthony Bergin started the business T26 Corporation. The purpose of T26 was to create a business model that consolidated lifestyle, health, and fitness service providers from multiple sectors "into one brick and mortar service destination." In April 2010, Bergin signed an operational agreement between T26, "its princip[als], agents, employees, contractors, and associates," and Natalie Nunamaker.[1] The agreement stated that Nunamaker would provide support services to T26 without pay unless and until T26 entered "pre-operations," the time period between receiving funding from outside investors and the beginning of construction of T26 locations.

In April 2011, Nunamaker quit working for T26. Despite receiving funding from various investors, T26 had failed to pay her. Nunamaker and her husband, John Sutey, eventually sued T26, Bergin, and several other individuals. They alleged various claims, including breach of contract, breach of implied covenant of good faith and fair dealing, and willful withholding of wages.

---

[1] Nunamaker has since married and her last name is now Sutey. For clarity, we refer to her individually as Nunamaker. We refer to Nunamaker and her husband, John Sutey, collectively as the Suteys.

2

The Suteys initially had trouble serving the summons and complaint on T26. On February 9, 2012, a process server attempted to serve the summons and complaint on T26 at an address on Ashworth Avenue. But, Bergin's wife told the server that Bergin was out of town. On February 13, Bergin told the server to take the summons and complaint to his lawyer. The return of service form does not indicate how Bergin communicated this information. On February 14, the server personally served T26 at the same Ashworth address by leaving the summons and complaint with attorney Garth Schlemlein.[2] On March 20, the Suteys amended their complaint and sent T26's attorney, Theresa Goetz, a copy of that complaint.

On March 28, 2012, Goetz sent the Suteys a signed notice of appearance, stating that she was appearing on behalf of the defendants, including Bergin. The Suteys' attorney, Brian Chase, received the notice on April 2. On April 5, Bergin was personally served with a copy of the Suteys' amended complaint, and original summons and complaint, at the Ashworth address. However, the record does not reflect that the documents served on April 5 were filed.

T26 then engaged in prelitigation discovery with the Suteys. In response to the Suteys' first set of interrogatories for T26, Bergin identified himself as a director of the business. In response to an interrogatory about whether T26 was claiming improper service, T26 stated, "The Defendants have not filed an answer to the Complaint or Amended Complaint so they have not yet asserted any affirmative

---

[2] The return of service form does not indicate if Schlemlein was serving as counsel for T26, Bergin, or both. Attorney Theresa Goetz, who later signed a notice of appearance on behalf of Bergin, worked at the same firm as Schlemlein at the time.

defenses." On July 17, 2012, Bergin signed the answers to the first set of interrogatories. In doing so, he acknowledged that he was one of the defendants in the action. Goetz notarized the answers. In late 2012, Bergin was forced out of T26.

As a result of discovery, the Suteys learned that two additional people, Alan Winningham and Michael Visse, were necessary parties to the case. Thus, on December 18, 2012, they amended their complaint to add Winningham and Visse as defendants. They sent Goetz a copy of the second amended complaint. On March 4, 2013, the Suteys amended their complaint again to correct the spelling of Winningham's and Visse's names. They sent a copy of the third amended complaint to Goetz. They also personally served defendants William Sechter, Marc Wilaby, and Winningham with copies of the third amended summons and complaint.[3] Chase received another written notice of appearance from Goetz on behalf of all of the defendants on April 1.

The Suteys did not file their third amended complaint until June 26, 2013. They also filed the summons on that date. The electronically filed summons and complaint were not signed. On June 28, 2013, Goetz filed a notice of appearance with the court. She stated that she was appearing for defendants T26, Sechter, Wilaby, Winningham, and Visse. She did not state that she was appearing for Bergin.

---

[3] It is unclear from the record whether Visse was also personally served with this complaint. Chase stated in a declaration that Sechter, Wilaby, and Winningham were personally served, and did not address service on Visse.

4

On July 8, 2013, the Suteys filed motions for orders of default against all of the defendants, including Bergin. As to Bergin, they alleged that he was personally served with a copy of the summons and complaint in April 2012. They asserted that "[m]ore than twenty (20) days have passed and no answer has been received or filed." They also mentioned that they had received a notice of appearance from Bergin's attorney Goetz. The parties do not address the outcome of these motions in their briefing. Based on the trial court docket, it appears that the motions were never decided.

Later that month, on July 26, 2013, Goetz filed a notice of intent to withdraw as counsel for Bergin. She stated that her withdrawal would be effective August 9, 2013. She provided the Ashworth address as Bergin's last known address.

In January 2014, the Suteys moved for leave to amend their complaint. They explained, "Plaintiffs are required under CR 15(a) to obtain leave of court in order to file a second amended complaint."[4] The electronically filed motion was not signed. In a declaration of mailing filed the same day, Mary Nunamaker[5] stated that she mailed a copy of the motion to Bergin at the Ashworth address. The trial court granted the Suteys' motion on February 24, 2014. It explained that they were

---

[4] It is unclear why the Suteys referenced a second amended complaint instead of their third amended complaint, which they filed in June 2013. Because the trial court granted them leave to file their "third amended complaint," it appears that they were referring to that complaint.

[5] For clarity, we refer to her throughout the remainder of the opinion as Mary. Although Mary shares a last name with Nunamaker, she was not a party to the case. Rather, she was Chase's legal assistant.

allowed to file their "third amended complaint" within 10 days of the date of the order.[6]

On March 3, 2014, the Suteys again filed their third amended complaint. The electronically filed complaint was not signed. In a declaration of mailing also dated March 3 and signed by Mary, she stated that she mailed a copy of the third amended complaint to Bergin at the Ashworth address. A limited liability company created by Bergin the next month listed the Ashworth address as his street address.

On May 22, 2014, the Suteys filed another motion for order of default against Bergin. They again alleged that Bergin was personally served with a copy of the summons and complaint in April 2012, and that they had received a notice of appearance from Bergin's attorney Goetz. Although Goetz later withdrew as counsel for Bergin in August 2013, they assumed for purposes of the motion that Bergin had appeared in the action. They also stated that they had mailed a copy of the third amended complaint to Bergin in March 2014.

In support of their motion, the Suteys relied on CR 15(a), which provides that "[a] party shall plead in response to an amended pleading within the time remaining for response to the original pleading or within 10 days after service of the amended pleading, whichever period may be the longer, unless the court

---

[6] As noted above, the Suteys filed their third amended complaint a year earlier in June 2013. It is unclear why the Suteys then moved for leave to file this complaint in January 2014. It appears they were concerned that they would be out of compliance with CR 15(a) if they did not seek leave to file the third amended version. The third amended complaint filed in June 2013 and the third amended complaint filed in March 2014 are identical.

otherwise orders." According to the Suteys, more than 10 days had passed since Bergin was served with the third amended complaint, and Bergin had failed to plead or answer. In a declaration of mailing also filed on May 22, Mary stated that she mailed a copy of the motion to Bergin at the Ashworth address. On June 19, 2014, the trial court granted the Suteys' motion and entered an order of default against Bergin.

About nine months later, in March 2015, a notice of settlement was filed with the trial court. The notice informed the court that the Suteys' claims against defendants T26, Sechter, Wilaby, Winningham, and Visse had been resolved. In April 2015, the trial court entered an order dismissing the Suteys' claims against those defendants with prejudice.

On June 4, 2015, the Suteys moved for default judgment against Bergin. They sought a total judgment amount of $142,562.80. On August 10, 2015, the trial court granted the Suteys' motion. It found that Bergin was personally liable to Nunamaker "for her unpaid wages, double-damages, [and] reasonable attorney's fees and costs." It therefore awarded the Suteys a total of $142,562.80 in damages.

In May 2018, the Suteys attempted to collect on their judgment against Bergin. They sent a writ of garnishment to a number of physical addresses thought to be associated with him, as well as an e-mail address. In August 2018, after Bergin failed to respond, the Suteys filed a motion against the garnishee defendant, Materia Group Incorporated. In November 2018—over three years after the trial court entered a default judgment against him—Bergin filed a motion

7

to vacate the order of default and default judgment, and to quash the writ of garnishment. He alleged the following:

1. This action was not initiated within 90 days of the alleged service upon Anthony and therefore has no force or effect. RCW 4.16.170.

2. [Bergin] was not served with the summons and complaint filed in this action. CR 5.

3. The summons filed in this action is unsigned and therefore defective. CR[ ]4; CR 11.

4. [Nunamaker] failed to serve [Bergin] with the motion for default as required by CR 55.

Thus, the Order and the Judgment should be vacated under CR 55 and 60.

Citing CR 60(b), Bergin argued that the default judgment was void. He also asserted that the Suteys' misrepresentations to the court regarding service of the summons and complaints constituted fraud.

The trial court denied Bergin's motion to vacate. It found that, on April 2, 2012, Goetz appeared on Bergin's behalf in the case. It also found that, on April 5, 2012, Bergin was personally served with the original summons and complaint at the Ashworth address. Further, it found that, after Goetz withdrew from representing Bergin in August 2013, "Bergin was thereafter served copies of relevant pleadings via mail, including a motion to amend the complaint, a motion for a default order, and a motion for a default judgment against him." Last, as to the unsigned summons and complaints, it found,

Be[r]gin disputes that summons and complaints were signed by counsel, given that electronically filed copies to [sic] do not contain a handwritten signature. Former counsel for Sutey, in the Declaration of Brian Chase suggests otherwise. Further, attached copies filed

8

as exhibits contain signatures, e.g.[,] exhibits A[ ]& B of sub 36. The Court finds that all inferences can be made to support a finding that Bergin was provided signed copies of necessary summons and complaints.

Accordingly, the trial court concluded,

1. Attorney Goetz's notice of appearance on behalf of Bergin served on April[ ]2, 2012 remained in effect at time of the filing of the case. Therefore CR 55 (f)(2) does not apply. Service by mail on the defendant pursuant to CR 5(b)(2) is sufficient to provide notice of the motion for default which is subject to this motion.

2. No legal grounds exist to vacate the default or default judgment.

3. Defendant Bergin's motion to vacate is denied.[7]

The court also granted the Suteys' request for attorney fees for defending the motion. It awarded them a total of $7,350.00.

Bergin appeals.

## DISCUSSION

Bergin makes three main arguments. First, he argues that the trial court abused its discretion in denying his motion to vacate, because the default judgment against him is void under CR 60(b)(5). He makes a number of assertions in support of this argument, including that he was not properly served with the summons in this case. Second, he argues that the Suteys' misrepresentations to the trial court regarding service of the summons and complaint constituted fraud on the court under CR 60(b)(4). Third, he argues that the trial court abused its discretion in awarding the Suteys attorney fees for defending the motion to vacate.

---

[7] In referring to Goetz's notice of appearance on behalf of Bergin, the trial court stated that the notice was instead "served on April 12, 2012." This appears to be a scrivener's error. In its findings of fact, the trial court found that Goetz appeared on Bergin's behalf "[o]n April 2, 2012." Also, the signed notice of appearance in the record states that Chase received the notice on April 2, 2012.

9

A court may set aside a default judgment in accordance with CR 60(b). CR 55(c)(1). CR 60(b) provides in part,

> On motion and upon such terms as are just, the court may relieve a party or the party's legal representative from a final judgment, order, or proceeding for the following reasons:
>
> . . . .
>
> (4) Fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party;
>
> (5) The judgment is void.

This court reviews a trial court's decision on a motion to vacate a default judgment for abuse of discretion. Morin v. Burris, 160 Wn.2d 745, 753, 161 P.3d 956 (2007). A trial court abuses its discretion when it is exercised on untenable grounds or for untenable reasons. Id. On the other hand, whether a judgment is void is a question of law that this court reviews de novo. Castellon v. Rodriguez, 4 Wn. App. 2d 8, 14, 418 P.3d 804 (2018).

I.    Whether the Default Judgment is Void

Bergin argues first that the default judgment against him is void. In doing so, he asserts that he was never served with a summons in this case. If he was served, he argues that he was not served with a proper summons, because the summons served on him was not signed. He bases the argument on the fact that the summons filed with the court was not signed. He argues last that the summons filed was not the summons served, because it contains the names of defendants added to the action after he was served.

10

CR 60(b)(5) authorizes the trial court to relieve a party from a final judgment if that judgment is void. Courts have a mandatory, nondiscretionary duty to vacate void judgments. Ahten v. Barnes, 158 Wn. App. 343, 350, 242 P.3d 35 (2010). A default judgment is void if the issuing court lacks personal jurisdiction over the party or subject matter jurisdiction over the claim. See Rabbage v. Lorella, 5 Wn. App. 2d 289, 297, 426 P.3d 768 (2018). "In personam jurisdiction is obtained upon the initial service of process." Id. at 299. Thus, to invoke personal jurisdiction over a party, proper service of the summons and complaint is essential. Ahten, 158 Wn. App. at 349-50.

"Service of process must comply with constitutional, statutory, and court rule requirements." Walker v. Orkin, LLC, 10 Wn. App. 2d 565, 568, 448 P.3d 815, review denied, 195 Wn.2d 1009, 460 P.3d 169 (2019). A plaintiff bears the initial burden to prove a prima facie case of sufficient service. Scanlan v. Townsend, 181 Wn.2d 838, 847, 336 P.3d 1155 (2014). The party challenging the sufficiency of service must demonstrate by clear and convincing evidence that the service was improper. Id. We review whether service was proper de novo. Id.

CR 3 governs commencement of an action. CR 3(a) provides in part, "[A] civil action is commenced by service of a copy of a summons together with a copy of a complaint, as provided in rule 4 or by filing a complaint." CR 4(a) governs issuance of a summons. CR 4(a)(1) provides that the summons "must be signed and dated by the plaintiff or the plaintiff's attorney." The word "must" imposes a mandatory requirement. Walker, 10 Wn. App. 2d at 572.

CR 4(b) governs the content and form of the summons. CR 4(b)(1) provides,

Contents. The summons for personal service shall contain:

(i) the title of the cause, specifying the name of the court in which the action is brought, the name of the county designated by the plaintiff as the place of trial, and the names of the parties to the action, plaintiff and defendant;

(ii) a direction to the defendant to serve a copy of the defendant's defense within a time stated in the summons;

(iii) a notice that, in case of failure so to do, judgment will be rendered against the defendant by default. It shall be signed and dated by the plaintiff, or the plaintiff's attorney, with the addition of the plaintiff's post office address, at which the papers in the action may be served on the plaintiff by mail.

CR 4(b)(2) states that the summons for personal service must substantially comply with "the following form." The form set forth shows that the plaintiff or plaintiff's attorney must sign the summons and print or type the name below the signature line. CR 4(b)(2).

A. Service

Bergin appears to dispute that he was ever served with a summons and complaint. He states, "Ms. Sutey appears to claim that she served Mr. Bergin with a summons and amended complaint on April 2012 (which Mr. Bergin disputes)." He does not devote further argument to that assertion.

The trial court found that, on April 5, 2012, Bergin was personally served "with the original summons and complaint in this action by process server Eric Train[a]" at Bergin's Ashworth address. It also found that Bergin's assertion that it was not he who accepted service on that date was not credible. We review a trial

12

court's findings of fact for substantial evidence. Sunnyside Valley Irrigation Dist. v. Dickie, 149 Wn.2d 873, 879, 73 P.3d 369 (2003). Substantial evidence is "a quantum of evidence sufficient to persuade a rational fair-minded person the premise is true." Id. We cannot review credibility determinations on appeal. Morse v. Antonellis, 149 Wn.2d 572, 574, 70 P.3d 125 (2003).

In a return of service form in the record, process server Traina stated under penalty of perjury that, on April 5, 2012, he personally delivered an amended complaint, an original summons, and an original complaint to Bergin at the Ashworth address. The process server signed the return of service form. To the extent that Bergin challenges the trial court's finding that he was served with a summons and complaint in April 2012, this form constitutes substantial evidence to support that finding.

## B. Lack of Signature

Bergin argues next that, because the summons filed in this case was not signed, the summons served on him was not signed. Therefore, he asserts that service of the summons on him was invalid. The summons that the Suteys electronically filed in June 2013 was not signed.

As to whether Bergin was served with a signed summons, the trial court found,

> Bergin disputes that summons and complaints were signed by counsel, given that electronically filed copies to [sic] do not contain a handwritten signature. Former counsel for Sutey, in the Declaration of Brian Chase suggests otherwise. Further, attached copies filed as exhibits contain signatures, e.g.[,] exhibits A[ ]& B of sub 36. The Court finds that all inferences can be made to support a finding that

13

Bergin was provided signed copies of necessary summons and complaints.

Bergin contends that "the trial court's 'inference' that he was served with signed copies is error." We construe this statement as a substantial evidence challenge.

Bergin did not offer the summons served on him to prove it was unsigned. Instead, he points to the unsigned documents in the court file to demonstrate the defect in service. Chase had consistently filed unsigned documents in this matter through the court's electronic filing portal. But, in a declaration filed on January 4, 2019, Chase stated,

> It has been brought to my attention that several documents on file with the Court from my office do not show as signed in the Court docket. I am fully aware that all pleadings must be signed (hence the signature spot) under CR 11. As far as I know every document submitted was authenticated by me at the time and working copies would have also had a signature on all documents.

In a return of service form in the record, a process server stated that, on April 5, 2012, he personally delivered an amended complaint, an original summons, and an original complaint to Bergin at the Ashworth address. And, before the court granted the Suteys permission to file the third amended complaint, the Suteys filed a January 27, 2014 declaration of mailing. Attached as exhibits to that declaration were signed copies of the third amended complaint, second amended complaint, and amended complaint. The declaration of mailing stated that a copy of the Suteys' motion for leave to amend and the attached exhibits were sent to Bergin's Ashworth address. The fact that each of the complaints attached as exhibits to the declaration of mailing were signed strongly suggests that the copies of the summons and complaints that were served on Bergin were

14

signed, even though unsigned copies were electronically filed. Thus, the existence of signed copies of the Suteys' complaints, supported by Chase's declaration, constitutes sufficient evidence to persuade a rational, fair-minded person that Bergin was served with a signed summons and complaint.

Bergin fails to establish factually the lack of signature on the summons served on him. A trial court is deemed to have acquired jurisdiction from the time of commencement of an action by service of a summons. RCW 4.28.020. Therefore, Bergin fails to establish that service was ineffective as a matter of law to establish personal jurisdiction over him.

C. Summons Filed Was Not Summons Served

Bergin argues next that the summons served on him failed to comply with CR 4(b)(1)(i), CR 5(d)(1), and RCW 4.16.170 because it did not match the summons filed in this case. He does not argue that the summonses are substantively different from one another. Rather, he contends that the summons served on him failed to comply with CR 4(b)(1)(i) because the only summons that was electronically filed contained two additional defendants added after he was served. He asserts that CR 5(d)(1) required the summons served on him to be electronically filed. He also argues that, under RCW 4.16.170, the Suteys had to file a copy of the same summons served on him.

Under CR 4(b)(1)(i), a summons for personal service must contain "the title of the cause, specifying the name of the court in which the action is brought, the name of the county designated by the plaintiff as the place of trial, and the names of the parties to the action, plaintiff and defendant." (Emphasis added.) The trial

15

court found that, on April 5, 2012, Bergin was personally served with the original summons and complaint at the Ashworth address. Bergin does not argue that the summons served on him in April 2012 failed to include the names of the parties to the action <u>at that time</u>. The copy of that summons in the record clearly did. But, the record does not reflect that this original summons was ever filed.

In December 2012, the Suteys added additional parties, Winningham and Visse, as defendants to the action. In June 2013, the Suteys electronically filed a new summons and complaint that included Winningham's and Visse's names in the caption. Copies of the amended pleadings were sent to Bergin's counsel at the time. The record does not reflect that Bergin was personally served with a new summons after Winningham and Visse were added. Bergin cites no authority to support that failure to personally serve him with these amended pleadings renders earlier, proper service of a summons invalid.

Bergin nonetheless relies on <u>Lindgren v. Lindgren</u>, 58 Wn. App. 588, 794 P.2d 526 (1990). The claim on appeal there was that the trial court abused its discretion in vacating a default judgment Demopolis[8] had obtained against Kimzey under CR 60(b). <u>Lindgren</u>, 58 Wn. App. at 589. The validity of a default judgment requires that a proper summons was served upon the defaulting party. <u>Id.</u> at 596. It is the summons alone that conveys to a defendant that failing to appear and defend can result in the entry of a default judgment. <u>Id.</u> at 596-97. The record in <u>Lindgren</u> contained a third party complaint directed to Kimzey, but <u>no</u> summons.

---

[8] Demopolis had filed a third party complaint alleging that Lindgren's son and Kimzey conspired to defraud him by forging Lindgren's signature on a quitclaim deed. <u>Lindgren</u>, 58 Wn. App. at 590.

Id. at 597. Kimzey filed an affidavit in support of her motion to vacate the default judgment, asserting that she had no notice that Demopolis intended to move for default. Id. This court found that Kimzey's affidavit, combined with the lack of summons in the court file, supported the conclusion that Demopolis served an invalid summons upon Kimzey. Id. at 597-98. It explained,

> The lack of summons in the file justifies an affirmance of the vacation of the default judgment. Without the benefit of the summons in the court file, we have no way to determine whether Kimzey was properly notified. Having only her affidavit which states that she had no notice that Demopolis intended to move for default, the only reasonable conclusion is that the summons was defective.

Id. at 597. As a result, this court held that the trial court properly vacated the default judgment under CR 60(b)(5). Id. at 598.

Unlike the affidavit given in Lindgren, Bergin does not argue that the summons served on him was defective in notifying him of the risk of default. In fact, apart from his signature argument rejected above, he does not allege that the content of the summons served on him was defective at all. He points only to the additional defendants listed in the caption in the electronically filed summons as evidence that it was not the same one served. Bergin's reliance on Lindgren is not based on its holding, but on the statement made in the opinion that

> CR 5(d)(1) requires all pleadings that must be served upon parties to be filed. The summons is such a document. In addition, under RCW 4.16.170, a party must file a copy of the same summons which was served.

Lindgren, 58 Wn. App. at 597 (citing Nearing v. Golden State Foods, 114 Wn.2d 817, 792 P.2d 500 (1990) (Dore, J., dissenting)).

17

But, the majority in Nearing rejected the dissent's argument. In Nearing, the tolling of the statute of limitations under RCW 4.16.170 was at issue.[9] 114 Wn.2d at 820. Two summons were served, but only the second was filed. Id. at 818. The majority held that the earlier summons was sufficient to toll the statute of limitations. Id. at 823. And, even though the first summons was never filed, the filing of a summons and complaint within 90 days of service of the first summons validly commenced the action. Id. at 822-23.

CR 5(d)(1) requires that "all pleadings and other papers after the complaint required to be served upon a party shall be filed with the court either before service or promptly thereafter." Sutey filed a summons. As in Nearing, it was not the same summons served on Bergin. But, unlike Lindgren, Bergin does not allege nor attempt to prove that either the summons served on him or the summons filed did not give him notice of the risk that failing to appear and defend can result in the entry of a default judgment, as required by the court rule. He suggests only that, due to the difference in the captions, they were not one and the same and do not

---

[9] Bergin points out that the Suteys failed to file their action in the trial court within 90 days of serving him, as required by RCW 4.16.170. As a result of this failure, he alleges that the Suteys' wage and breach of contract claims expired on April 6, 2014 and April 6, 2017, respectively. However, the Suteys filed their third amended complaint on June 26, 2013. They sent a copy of that complaint to Goetz. At that point, Goetz had already signed a notice of appearance on behalf of Bergin. The Suteys later sought leave to file their third amended complaint. The trial court granted them leave, and they again filed the complaint on March 3, 2014. Bergin was no longer represented by Goetz at that time, so the Suteys mailed him a copy of that complaint. Thus, the Suteys filed their claims before the statutes of limitations expired. Bergin does not address these facts in his RCW 4.16.170 argument. Accordingly, we reject his contention that the Suteys' wage and breach of contract claims have expired.

comply with the court rules. We disagree and conclude that on this record, the summons filed by the Suteys satisfied CR 5.

The summons personally served on Bergin in April 2012 complied with the provisions in CR 4 governing the form and content of a summons. Thus, the trial court acquired personal jurisdiction over him at that time. The electronically filed summons satisfies the court rules. Therefore, the trial court correctly concluded that the default judgment entered against Bergin is not void. Accordingly, the trial court did not abuse its discretion in denying the CR 60(b)(5) motion to vacate.

II.   Whether the Suteys Committed Fraud on the Court

Bergin argues second that the Suteys' misrepresentations to the trial court regarding service of the summons and complaint constituted fraud on the court under CR 60(b)(4). Specifically, he contends that, contrary to the Suteys' assumption that Bergin had appeared in the action, Goetz never appeared on behalf of him. He points out that her second notice of appearance on June 28, 2013 did not include him. Further, he states, "The fact that she filed a notice of withdrawal regarding Mr. Bergin in the underlying suit is irrelevant given the failure to identify him in her [second] notice of appearance." Bergin seems to indicate that, because he never appeared in the action, the Suteys failed to comply with CR 55(f) in serving him with the notice of motion for default.

Under CR 60(b)(4), the trial court may vacate a judgment procured by fraud, misrepresentation, or misconduct. The rule is aimed at judgments unfairly obtained, not factually incorrect judgments. Peoples State Bank v. Hickey, 55 Wn. App. 367, 372, 777 P.2d 1056 (1989). As a result, "the fraudulent conduct or

19

misrepresentation must <u>cause</u> the entry of the judgment such that the losing party was prevented from fully and fairly presenting its case or defense." <u>Lindgren</u>, 58 Wn. App. at 596. The losing party must bring a CR 60(b)(4) motion to vacate within a reasonable amount of time. And, that party must establish the fraud or misrepresentation by clear and convincing evidence. <u>Peoples State Bank</u>, 55 Wn. App. at 372.

In finding of fact 3, the trial court determined, "On April 2, 2012, attorney Theresa A. Goetz appeared on behalf of corporate defendant T26 and individual defendants Be[r]gin, Sechter, Wilaby, and Winningham. The notice of appearance was not filed, since the case had not been filed at that point." However, Bergin asserts that Goetz never appeared on his behalf, because the notice of appearance that she filed in June 2013 did not include him. We construe his argument as a substantial evidence challenge.

On March 28, 2012, Goetz <u>signed</u> a notice of appearance on behalf of the defendants in this case, including Bergin. The first page of the notice shows that Chase, one of the Suteys' attorneys below, received the notice on April 2, 2012. The Suteys did not file their complaint until June 26, 2013. Two days later, Goetz <u>filed</u> a notice of appearance on behalf of defendants T26, Sechter, Wilaby, Winningham, and Visse, but not Bergin. About a month later, she filed a notice of intent to withdraw as counsel for Bergin effective August, 9, 2013. This evidence is sufficient to persuade a rational, fair-minded person that Goetz appeared on behalf of Bergin in April 2012.

Substantial evidence supports that Goetz appeared on behalf of him. Because Bergin had already appeared, CR 55(a)(3)—not CR 55(f)—applied to service of the Suteys' notice of motion for default. Bergin does not argue that the Suteys failed to comply with CR 55(a)(3) in serving the notice, or misrepresented their failure to comply to the trial court.

Bergin has failed to establish fraud or misrepresentation by clear and convincing evidence. Accordingly, the trial court did not abuse its discretion in denying his CR 60(b)(4) motion to vacate.

III. <u>Attorney Fees Below</u>

Bergin argues third that the trial court abused its discretion in awarding the Suteys attorney fees for defending the motion to vacate. Specifically, he argues that Jonathan Baner, the attorney who represented the Suteys in defending the motion, speculated as to how many hours he spent on the matter. He states, "It appears that Mr. Baner does have a timekeeping program by which he can track his hours but purposely chose not to here. Thus, there is no factual basis for the hours Mr. Baner claims."

Bergin takes issue with the reasonableness of the attorney fee award. A trial judge is given broad discretion in determining the reasonableness of an award. <u>Ethridge v. Hwang</u>, 105 Wn. App. 447, 460, 20 P.3d 958 (2001). To reverse such an award, Bergin must show that the trial court manifestly abused its discretion. <u>Id.</u>

21

Bergin points to the following statements in Baner's declaration regarding the hours he spent defending the motion to vacate:

7. 21 hours at $350/hour is $7,350.[00]. This is less than counsel for Mr. Bergin sought as of the first hearing that was struck. If a 1.25 multiplier is applied the amount is increased to $9,187.50.

8. The above times are conservative estimates and likely underreport the amount of time expended. Estimates are based on my personal memory of the time spent. I do not generally use a timer on my contingency fee collection cases unless there is some compelling reason to do so such as the expectation that attorney fees will be granted for a substantially complex case (e.g.[,] a collection on a breach of contract case that might take 100 hour[s] over the course of several months) where memory would be too unreliable.

The trial court declined to apply a multiplier based on Baner's 25 percent contingency fee, but awarded the Suteys $7,350.00 in attorney fees.

Bergin does not challenge Baner's hourly rate. Rather, he takes issue with Baner's failure to use a timer to determine the amount of hours he spent defending the motion. While the better practice would have been to prepare detailed summaries of the work performed based on contemporaneous time records, there is no per se rule that permitting an attorney to rely upon reconstructed records is an abuse of discretion. Miller v. Kenny, 180 Wn. App. 772, 822, 325 P.3d 278 (2014). And, contrary to Bergin's assertion, Baner's declaration offers a factual basis for the court's decision. As a result, the trial court did not abuse its discretion in awarding the Suteys $7,350.00 in attorney fees.

IV.    Attorney Fees on Appeal

The Suteys request attorney fees on appeal under RCW 49.52.070.  RCW 49.52.070 authorizes an award of attorney fees to a party who successfully recovers wages owed under RCW 49.52.050(1) or (2).

In granting the Suteys' motion for default judgment, the trial court concluded, "Anthony Bergin and/or T26, Inc., violated RCW 49.52.050(2) when they willfully and with intent to deprive Ms. Sutey of her wages refused to pay Ms. Sutey all wages she earned pursuant to said employment contract."  It therefore awarded her unpaid wages under RCW 49.52.070.  Accordingly, we award the Suteys attorney fees under RCW 49.52.070, subject to their compliance with RAP 18.1(d).

We affirm.

_Appelwick, J._

WE CONCUR:

_Chun, J._          _Leach, J._

23