IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In the Matter of the Marriage of | ) | |
| | ) | No.  38319-9-III |
| DEVIN KIENOW, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| and | ) | UNPUBLISHED OPINION |
| | ) | |
| TERESA DITTENTHOLER KIENOW, | ) | |
| | ) | |
| Respondent. | ) | |

SIDDOWAY, C.J. — Devin Kienow asks us to reverse the parenting plan entered in this proceeding dissolving his marriage to Teresa Dittentholer,[1] and to award him attorney fees incurred in challenging a divorce action Ms. Dittentholer commenced in the Yakama Nation Tribal Court.  Ms. Dittentholer later agreed to resolve the dissolution through the proceeding below.

His appeal does not present a timely challenge to any wrongful refusal by the trial court to exercise jurisdiction out of deference to proceedings in tribal court.  We find no error or abuse of discretion by the trial court in allocating residential time and decision-making authority in its parenting plan.  While Mr. Kienow continues to characterize Ms.

_____

[1] The final divorce order changed the respondent's name from Teresa Dittentholer Kienow to Teresa Alma Dittentholer.

Dittentholer's litigation conduct as intransigent, substantial evidence supports the trial court's finding that it was not. We affirm.

FACTS AND PROCEDURAL BACKGROUND

Devin Kienow and Teresa Dittentholer were married in June 2010. They share two children, D.G. and D.H., who are presently 12 and 6 years old.[2] The parties separated in June 2018 when Ms. Dittentholer moved out and began living with her boyfriend at a home within the Yakama Nation Reservation.

Ms. Dittentholer is an enrolled member of the Yakama Nation. On July 10, 2018, she filed a petition for dissolution in the Yakama Nation Tribal Court. She asked that the court order child support and approve a parenting plan, which she stated she would file and serve separately. She asserted that the tribal court had jurisdiction.

Nine days later, Mr. Kienow filed his own petition for dissolution in the Yakima County Superior Court. He asked the superior court to order child support and approve his proposed parenting plan. He disclosed his knowledge of the action Ms. Dittentholer had earlier filed in tribal court.

On July 25, 2018, Ms. Dittentholer made an ex parte motion for a parenting plan order, which the tribal court heard that day. Although Mr. Kienow was not present at the hearing, his lawyer was. According to the parenting plan order later entered by the tribal court, the court ruled that jurisdiction was to remain with the tribal court and the couple

---

[2] We identify the children by their initials to protect their privacy.

was to have "50/50 custody, one week on, one week off.  Pick up and drop offs shall take place from Thursday 6:00 p.m. to Thursday at 6:00 p.m. until Final Parenting Plan is finalized."  Clerk's Papers (CP) at 180.  The tribal court's parenting plan order also provided that the parties' older child, D.G. "is to continue to attend St. Joseph Marquette," the Catholic school he was then attending.  CP at 181.

On August 8, 2018, then-superior court Commissioner Elisabeth Tutsch held a hearing on Mr. Kienow's petition for dissolution.  She directed the parties to address the matter in tribal court.  No written order was entered.

On September 12, 2018, Mr. Kienow filed, in the dissolution action, an ex parte motion for an immediate restraining order protecting himself and the couple's two children from contact by Ms. Dittentholer.  He did not provide notice of the ex parte application to his wife or her lawyer.  In a supporting declaration, he accused his wife of a history of substance abuse, of committing domestic violence against him, of having at times been suicidal, and of having an affair with a man with "a sustained criminal history and repeated contact with law enforcement."  CP at 15.  He disclosed in his declaration that dissolution proceedings were pending and that Ms. Dittentholer had filed first in tribal court, but he asserted that the tribal court lacked personal and subject matter jurisdiction.  He stated that he had filed a change of venue motion with the tribal court.

The immediate relief requested by Mr. Kienow's motion for a restraining order was that the children remain in his custody until the return hearing, and that his wife stay

away.  The motion was heard by Judge Blaine Gibson.  An immediate restraining order

prohibiting Ms. Dittentholer from contacting her children was granted by Judge Gibson

but was dissolved at the return hearing.

Ms. Dittentholer filed a motion for CR 11 sanctions against Mr. Kienow for his ex

parte application to Judge Gibson.  On October 11, 2018, it was heard by Commissioner

Tutsch.  As relevant to this appeal, Commissioner Tutsch ordered:

> [T]hat all matters by stayed in superior court until Yakima [sic] Nation has
> addressed jurisdictional issues and the father's motion to dismiss (to be
> filed).

CP at 28.  Rather than file a motion to dismiss the tribal court proceeding, Mr. Kienow

appealed the tribal court's parenting plan order to the Yakama Tribal Court of Appeals

the next day.

In a declaration filed in the superior court by Ms. Dittentholer several months

later, she testified that on November 7, 2018, she received word from the Yakama Nation

that her children were not eligible to be enrolled.  She testified that while they "are in fact

¼ Native American and not 17% as Mr. Kienow claimed, they are . . . not ¼ Yakama."

CP at 56.[3]  Because the children were not able to be enrolled, Ms. Dittentholer conceded

in the declaration that "the Parenting Plan must be in Superior Court."  *Id.*

---

[3] The full declaration is not in the record on appeal, only a portion, which Mr. Kienow filed and characterized as having been originally filed on February 1, 2019.

4

On August, 22, 2019, without his attorney's knowledge or notice to Ms. Dittentholer, Mr. Kienow again moved the superior court for entry of an immediate restraining order against Ms. Dittentholer. He again obtained an ex parte order prohibiting her contact with her children. This time, his supporting declaration stated that Ms. Dittentholer "continuously proves her inability to make safe parenting decisions" by residing with her boyfriend, who had recently been charged with vehicular homicide for a collision he was alleged to have caused with suicidal intent. CP at 43. Once again, Mr. Kienow asserted that Ms. Dittentholer had "improperly filed for divorce in Yakama Tribal Court." CP at 44. The motion was heard by Judge Douglas Federspiel, who granted the immediate restraining order.

Commissioner Tutsch presided at the return hearing. Mr. Kienow had consulted his lawyer after obtaining the ex parte restraining order, and his lawyer filed a further declaration in which Mr. Kienow stated that on the issue of jurisdiction, Ms. Dittentholer stipulated to state court jurisdiction over the children, but wished to resolve property issues in the tribal court. Mr. Kienow's declaration stated that if Ms. Dittentholer would not stipulate to state court jurisdiction over all dissolution issues, he would bring a motion seeking temporary orders.

At the hearing, which took place on August 30, 2019, Commissioner Tutsch dissolved the restraining order, finding that the motion was "brought in bad faith as mother or her attorney should have been given notice." CP at 68. Issues of terms and

5

makeup visitation were reserved. The order memorialized a stipulation by the parties that "this court has jurisdiction over the children." *Id.* The commissioner ordered that neither parent should allow the boyfriend who had been charged with vehicular homicide to have contact with the children. It "reinstate[d] a 50-50 plan until further motion." *Id.*

Within a week, Mr. Kienow moved the superior court for a temporary custody order and parenting plan, arguing that the status quo "is not working well for the children." CP at 76. He pointed out that he had been the primary custodial parent during the marriage and alleged that Ms. Dittentholer had been unable to co-parent in a consistent and amicable manner following the separation. He offered many alleged reasons why Ms. Dittentholer was a poor parent.

The court conducted an initial hearing on the motion on September 19, 2019, at which it made several factual findings but requested further briefing on the following issues, to be heard on October 10, 2019: (1) maintenance, (2) domestication of judgment,[4] (3) assets/liabilities request, and (4) attorney fees and for bad faith actions. The court made the following temporary order on custody:

> The court finds both parents are capable of parenting the children. The court denies both requests regarding the parenting plan and maintains the current 50-50 as the status quo.

CP at 115.

---

[4] The tribal court had entered a $3,000 judgment against Mr. Kienow in favor of Ms. Dittentholer.

6

On October 10, 2019, having considered the parties' submissions and argument, Commissioner Tutsch entered an order asserting jurisdiction over the cause. As relevant to the appeal, she entered the following conclusions of law and order:

9. The mother previously stipulated to state court jurisdiction over the children;

10. In her response memo, the mother stipulated to concurrent state court jurisdiction over the property, including real and personal; and

11. The parties have stipulated to the division of certain property and this Court's jurisdiction to order and enforce such a division.

The Court concludes Washington State has jurisdiction over this matter. The Yakima [sic] Nation may have concurrent jurisdiction but there is insufficient evidence before the Court.

NOW THEREFORE, it is ORDERED:

. . . The Court hereby asserts jurisdiction over the entire cause.

CP at 226.

The court also found that during the "hearing on September 19," Mr. Kienow "acted in bad faith without his attorney" and imposed reasonable attorney fees of $750. CP at 224. (We believe the intended reference was the August 22, 2019 ex parte hearing at which Mr. Kienow obtained the immediate restraining order.).

In June 2020, by-then superior court Judge Tutsch entered a temporary family law order addressing several matters. As relevant to issues on appeal, she ordered the parties' children to begin counseling with Tawnya Wright or Scott Whitmer, "who[ever] is available first"; and ordered the parties' "[c]hild" (presumably D.G., by then 9 years old) to remain enrolled at St. Joseph Marquette until trial. CP at 230.

7

*Trial*

The matter proceeded to a four-day trial before Judge Tutsch in May 2021. Mr. Kienow characterized "the most important part of this trial" as the parenting issues. Rep. of Proc. (RP) at 12. He sought restrictions under RCW 26.09.191 on Ms. Dittentholer based on her alleged history of domestic violence toward him. He asked to be designated the primary residential parent and for Ms. Dittentholer to have visitation every other weekend. He requested an award of attorney fees, arguing that "no jurisdictional fact pointed toward Tribal Court jurisdiction." RP at 19. Mr. Kienow testified that he owed $79,518.75 in legal fees for the period before the superior court assumed jurisdiction, which he requested be awarded on the basis of intransigence.

Ms. Dittentholer contended that she had been an active, involved parent. While she asked the court to place the children primarily with her, she acknowledged that the "really easy solution, the least disruptive solution" would be to continue the 50-50 parenting plan that the parties had been living under since 2018. RP at 22. She, too, sought an award of attorney fees, citing as bad faith and intransigence Mr. Kienow's motions for restraining orders and his unproductive litigation in tribal and federal court.

Mr. Kienow called three witnesses in addition to himself: his sister, a neighbor, and another friend, all of whom testified to their observation of his relationship with his sons.

8

Ms. Dittentholer called two witnesses in addition to herself: one of D.G.'s teachers, who testified to her observation of the mother's relationship with D.G. and participation in school activities, and Dr. Scott Whitmer, who had been court appointed to provide counseling to the children and their parents. Mr. Kienow made no objections during Dr. Whitmer's testimony, which was provided on the third day of trial.

Judge Tutsch took the matter under advisement and on June 15, 2021, entered her findings and conclusions, parenting plan, child support order, and final divorce order. The final parenting plan identified reasons for putting limitations on both parents: a history of domestic violence on the part of Ms. Dittentholer, and abusive use of conflict on the part of Mr. Kienow. In setting limitations on a parent, the court restricted Ms. Dittentholer from joint decision-making. But based on findings that there was no credible evidence of domestic violence by Ms. Dittentholer after the dissolution petition, domestic violence was unlikely to recur, and the best interests of the children, the court found that "an equal parenting plan is in the best interests of the children so they can have a balanced opportunity to develop their relationship with each parent." CP at 357. The parenting plan provided for the children to live with each of the parents on

> Alternating weeks. Each parent will have the children for one week on an alternating schedule. Exchange will take place on Thursdays at 6:00 p.m.

CP at 359.

9

The decision-making table in the parenting plan identified no major decisions that would be made jointly, and identified Mr. Kienow as having all decision-making authority on major school/educational and health care decisions "subject to" one of the court's child care and development rulings. In those rulings appearing in section 14 of the parenting plan, the court ordered that "[t]he children will be enrolled and attend St. Joseph Marquette Catholic School until they complete 8th grade. If the children are unable to attend St. Joseph, they may be enrolled in the West Valley School District." CP at 364 (¶ 14.9).

The court's final divorce order provided that each spouse would pay his or her own fees and costs. Elsewhere, the court found that "[n]either party has acted with intransigence in this litigation," the only exception being "unfounded restraining order requests" for which Mr. Kienow had already been sanctioned. CP at 348. The court entered detailed findings on the issues presented at trial that are discussed in further detail where relevant to errors assigned on appeal.

Mr. Kienow appeals.

## ANALYSIS

Mr. Kienow makes eight assignments of error that we analyze as presenting three sets of issues. The first is whether the trial court erred by failing to exercise an alleged nondiscretionary duty to assert jurisdiction on the filing of Mr. Kienow's petition, and when it maintained tribal court orders. (Assigned Errors 1 and 2). The second is whether

the trial court erred by considering Dr. Whitmer's testimony and whether it properly

applied RCW 26.09.191 and 26.09.187(3)(a) in allocating residential time and decision-

making in the parenting plan. (Assigned Errors 3-7.) The third is whether it erred when

it did not find Ms. Dittentholer intransigent and award Mr. Kienow the almost $80,000 in

attorney fees he incurred in tribal court proceedings. (Assigned Error 8.)

I.      NO DECISION BY THE TRIAL COURT REFUSING TO ASSERT JURISDICTION IS
        PROPERLY BEFORE US ON APPEAL, AND NO ERROR IN "MAINTAIN[ING]" THE
        PARENTING PLAN ORDERED BY THE TRIBAL COURT IS SHOWN

Mr. Kienow contends the trial court erred by failing to exercise "a non-

discretionary duty to assert jurisdiction from the date [his] petition was filed." Corrected

Br. of Appellant at 11 (capitalization and boldface omitted). No legal authority is

identified that supports this proposition. Mr. Kienow cites *In re Marriage of*

*Tsarbopoulos*, 125 Wn. App. 273, 281, 104 P.3d 692 (2004), but that case merely held

that whether Washington has jurisdiction over custody matters must be determined

consistent with chapter 26.27 RCW, the Uniform Child Custody Jurisdiction and

Enforcement Act (UCCJEA). The UCCJEA recognizes that more than one state (or

Indian tribe, since tribes are treated as states)[5] may have jurisdiction. *See* David Carl

Minneman, *Construction and Operation of Uniform Child Custody Jurisdiction and*

*Enforcement Act*, 100 A.L.R.5th 1 (2002) (citing four types of initial child custody

jurisdiction: home state jurisdiction, significant connection jurisdiction, jurisdiction by

_____

[5] RCW 26.27.041.

reason of declination of jurisdiction, and default jurisdiction). It recognizes that a state that has jurisdiction may decline to exercise it. *E.g.*, RCW 26.27.261, 26.27.271.

If Mr. Kienow was concerned that the trial court declined to exercise jurisdiction because it mistakenly perceived the tribal court to be a more appropriate forum, Mr. Kienow could have challenged the trial court's failure to assess the appropriateness of the tribal court's exercise of jurisdiction. He could have raised it through a motion in the trial court under RCW 26.27.261(2). If he believed he *had* adequately raised the challenge and Commissioner Tutsch had wrongly rejected it, he could have requested discretionary review by this court. He did neither. Instead, he pursued the issue of jurisdiction in tribal and federal court, as was his prerogative.[6]

At this point, the question of whether the tribal court was an appropriate forum is not properly before us for review. Mr. Kienow filed his notice of appeal to this court on July 15, 2021. The orders attached to the notice as designated for appeal were the final divorce order, the findings and conclusions, and the summons and petition for divorce filed in 2018. Only the final divorce order and findings and conclusions were timely and

---

[6] In addition to appealing the tribal court parenting order, Mr. Kienow made unsuccessful attempts in federal court to resolve the issue of the tribal court's jurisdiction. We have only limited information on these proceedings, but they consisted of a petition for a writ of habeas corpus filed on October 8, 2018, that was denied, and a December 11, 2018 motion to waive the exhaustion requirement and dismiss the tribal court action, which was also denied.

properly appealed. In neither of those rulings did the trial court refuse a request to assert jurisdiction over the dissolution proceedings.

In earlier orders entered by the trial court on August 8 and October 11, 2018, it arguably refused a request that it assert jurisdiction. But Mr. Kienow did not timely seek review of those orders through a notice for discretionary review under RAP 5.2.

Under RAP 2.4(b)(1) and (2), we will review "a trial court order or ruling not designated in the notice, including an appealable order, if (1) the order or ruling prejudicially affects the decision designated in the notice, and (2) the order is entered, or the ruling is made, before the appellate court accepts review." An order "prejudicially affects" the decision designated in the notice of appeal where the designated decision would not have occurred in the absence of the undesignated ruling or order. *Gomez v. Sauerwein*, 172 Wn. App. 370, 376-77, 289 P.3d 755 (2012) (citing *Right-Price Recreation, LLC v. Connells Prairie Cmty. Council*, 146 Wn.2d 370, 380, 46 P.3d 789 (2002)), *aff'd*, 180 Wn.2d 610, 331 P.3d 19 (2014). The trial court's August and October 2018 orders did not prejudicially affect the timely-appealed findings and conclusions or final divorce order. Indeed, not long after the August and October 2018 orders, Ms. Dittentholer received updated information from the Yakama Nation on her children's ineligibility for enrollment, in light of which she conceded the superior court had jurisdiction to decide issues relating to the children. She later stipulated to the superior

court assuming jurisdiction of the entire dissolution even though it remained her position that the tribal court had enjoyed some concurrent jurisdiction.

Mr. Kienow also argues that contrary to an alleged obligation to "void and ignore all tribal court orders," the trial court "maintained [the tribal court] orders." Corrected Br. of Appellant at 18, 20 (boldface and some capitalization omitted). He argues that the trial court was required to "review the matter de novo as if those tribal court orders did not exist." *Id.* at 20 (emphasis omitted). This argument lacks both legal and factual support.

Mr. Kienow relies on *Ahten v. Barnes*, 158 Wn. App. 343, 350, 242 P.3d 35 (2010), which holds that a Washington court presented with a CR 60(b)(5) motion has a mandatory, nondiscretionary duty to vacate a judgment that is void; hence appellate review is de novo. The judgment at issue in *Ahten* was a Washington superior court judgment. Mr. Kienow provides no legal authority that a Washington trial court has the power, let alone the duty, to vacate a *tribal court* judgment as void.

And Mr. Kienow fails to demonstrate that any ruling by Commissioner (later Judge) Tutsch on the residential schedule in and after the summer of 2019 was not independently arrived at by her. Independent decision-making does not require a court to act as if earlier court orders do not exist. That a residential schedule has been in place and working is relevant to an independent decision-maker; if the schedule is working well, it is highly relevant.

14

Mr. Kienow fails to identify any statement or suggestion by the trial court in and after August 2019 that it was "adopting" tribal court orders as controlling or "deferring to" tribal court decisions. To the contrary, the trial court's order of September 19, 2019, stated only that the court "maintains the current 50-50 as the status quo." CP at 115. Mr. Kienow has failed to arrange for transcription of the hearings taking place in August, September, and October 2019. Reasonably construed, the trial court's rulings carrying forward a 50-50 residential plan during this time frame were the result of its independent exercise of discretion.

II.     NO ERROR IN THE COURT'S APPLICATION OF RCW 26.09.187 AND 26.09.191 IS SHOWN

A trial court wields broad discretion when fashioning a permanent parenting plan. *Katare v. Katare*, 175 Wn.2d 23, 35, 283 P.3d 546 (2012) (citing *In re Marriage of Kovacs*, 121 Wn.2d 795, 801, 854 P.2d 629 (1993)). Its discretion must be guided by several provisions of chapter 26.09 RCW: RCW 26.09.187(3), which enumerates factors to be considered in making residential provisions; RCW 26.09.184, which sets forth the objectives of the permanent parenting plan and its required provisions; RCW 26.09.002, which declares the policy of the Parenting Act of 1987; and RCW 26.09.191, which sets forth factors that require or permit limitations upon a parent's involvement with the child. *Katare*, 175 Wn.2d at 35-36.

15

Mr. Kienow contends the trial court applied the RCW 26.09.191 restrictions too leniently to Ms. Dittentholer and too harshly to him; ignored them in ordering that the children attend St. Joseph Marquette through the 8th grade; and failed to follow the RCW 26.09.187(3)(a) factors. Inhering in his challenges to the court's applications of the statutes is Mr. Kienow's contention that the trial court erred "by allowing Dr. Whitmer's testimony." Corrected Br. of Appellant at 25 (boldface and some capitalization omitted). We address that issue before turning to the others.

A.    Any error in admitting and considering Dr. Whitmer's testimony is unpreserved

Members of the Kienow family had eight court-ordered family counseling sessions with Dr. Scott Whitmer, a licensed psychologist, starting in June 2020. The children went to six counseling sessions; the parents went to four each.

Ms. Dittentholer called Dr. Whitmer as a trial witness. Ms. Dittentholer presented his direct testimony without any objection from Mr. Kienow's lawyer. Mr. Kienow's lawyer cross-examined Dr. Whitmer at length.

Following trial and entry of final orders, Ms. Dittentholer apparently moved for reconsideration of the trial court's finding that she had committed domestic violence. She relied in part on some of Dr. Whitmer's trial testimony. Mr. Kienow moved to strike her reference to Dr. Whitmer's testimony, arguing for the first time that "[a] psychologist

16

can be a therapist or a parent evaluator, but not both." CP at 256. This objection by Mr. Kienow was raised three months after trial and two months after entry of the final orders.

Mr. Kienow relied for his belated objection on WAC 246-924-445, a professional standards and licensing regulation that addresses standards applied when a psychologist is "called upon to evaluate members of a family to assist in determining an appropriate residential arrangement, parental duties, or parental relationship with respect to a minor child." Subsection 7 of WAC 246-924-445, on which Mr. Kienow specifically relied, provides:

> The psychologist shall not have provided therapeutic services to any party involved in the evaluation. Unless there are mitigating circumstances, the psychologist shall decline to perform a parenting evaluation. Providing service in a rural or underserved area with limited professional options is an example of a possible mitigating circumstance.

When testifying at the trial, Dr. Whitmer did not claim to have been "called upon to evaluate members of a family to assist in determining an appropriate residential arrangement," the engagement addressed by WAC 246-924-445. When asked if he was making a recommendation about a parenting plan, he said he was not; he was merely responding to questions.

On appeal, Mr. Kienow renews his posttrial challenge to Dr. Whitmer's testimony as an assignment of error. But ER 103(a)(1) provides that "[e]rror may not be predicated upon a ruling which admits . . . evidence unless a substantial right of the party is affected and . . . [i]n case the ruling is one admitting evidence, a timely objection or motion to

17

strike is made, stating the specific ground of objection, if the specific ground was not apparent from the context."  This is in addition to RAP 2.5(a), which states the general rule that we may refuse to review any claim of error that was not raised in the trial court.

Mr. Kienow offers no basis on which he is entitled to review of this unpreserved alleged error.

### B.    Alleged error in applying RCW 26.09.191 limitations

Mr. Kienow contends the trial court applied the RCW 26.09.191 restrictions too leniently to Ms. Dittentholer and too harshly to him.  He contends that having found a history of domestic violence on the part of Ms. Dittentholer, the trial court was statutorily required to restrict her residential time and completely dispossess her of decision-making authority, but failed to do either.  He contends the court's finding that he engaged in abusive use of conflict is based on unsupported reasons.

Ms. Dittentholer responds that the court's finding that she had a history of domestic violence was not supported by substantial evidence.  She did not file her own notice of appeal, and her counsel concedes that on this point, she must rely on the narrow exception that would permit her to obtain affirmative relief where "demanded by the necessities of the case."  RAP 2.4(a)(2).  Ms. Dittentholer also argues that the finding that Mr. Kienow engaged in abusive use of conflict was well supported by evidence and justified the court's application of limitations to the parties.

18

We focus on the trial court's precise findings and limitations. In section 3(a) of the parenting plan, which identifies problems for which the court "must" limit parent contact with children, decision-making, and require judicial dispute resolution, the court identified the following problem:

> [X] **Domestic Violence** – *(Parent's name):* <u>TERESA DITTENTHOLER KIENOW</u> (or someone living in that parent's home) has a history of domestic violence as defined in RCW 26.50.010.
>
> The mother hit the father with a closed fist in the stomach and on other parts of his body.

CP at 356. The court made several findings of fact relating to its reasons for finding a history of domestic violence. Not having been assigned error, they are verities on appeal. *In re Marriage of Possinger*, 105 Wn. App. 326, 338, 19 P.3d 1109 (2001); RAP 10.3(g) (requirements for assigning error):

> 22.8    The father said things that were unkind or demeaning. The mother hit him with a closed fist in the stomach and on other parts of his body. She concedes she hit the father on more than one occasion, sometimes as a reaction to what the father said, and sometimes as a reaction to the father's unwanted physical advances.
>
> . . . .
>
> 22.21  . . . Both parents are subject to restrictions found in RCW 26.09.191. The mother's acts of domestic violence did not result in grievous bodily harm or fear of such harm. There have been no credible allegations of domestic violence incidents after this case was filed. It appears the mother will no longer engage in acts of domestic violence.

CP at 351, 353.

In section 3(b) of the plan, which identifies problems for which the court "may"

limit parent contact with children and decision-making, the court identified the following

problem:

> [ X] **Abusive use of conflict** – *(Parent's name):* <u>DEVIN KEINOW</u> uses conflict in a way that may cause serious damage to the psychological development of a child listed in **2**.
>
> The father used court processes to withhold the children from the mother. He has made unfounded allegations. He has disparaged the mother's relationship with the children. He has made belittling and condescending statements about the mother's Native American ancestry.

CP at 356. "Abusive use of conflict includes, but is not limited to, abusive litigation as

defined in RCW 26.51.020." RCW 26.09.191(3)(e). The court made several findings of

fact relating to its reasons for finding an abusive use of conflict by Mr. Kienow. Again,

not having been assigned error, the findings are verities on appeal:[7]

> 22.4 The father was not credible when he testified the mother was indifferent to the children. She may not have parented according to his standards. There may have been unresolved cultural differences. However, the testimony, photographs and school records show a

---

[7] At pages 30-35 of his corrected brief, Mr. Kienow challenges some statements made within the trial court's findings of fact. He did not assign error as required by RAP 10.3(g), however. Even more importantly (since we can overlook technical defects), Mr. Kienow does not cite portions of the trial record that demonstrate a lack of factual support. Instead, he simply reargues how the trial court should have viewed and weighed the evidence. "'If we were to ignore the rule requiring counsel to direct argument to specific findings of fact which are assailed *and to cite to relevant parts of the record as support for that argument*, we would be assuming an obligation to comb the record . . . for . . . why the evidence does not support these findings.'" *In re Est. of Palmer*, 145 Wn. App. 249, 265, 187 P.3d 758 (2008) (emphasis added) (quoting *In re Est. of Lint*, 135 Wn.2d 518, 532, 957 P.2d 755 (1998)). We will not review Mr. Kienow's inadequately briefed challenges to statements within the findings.

hands-on mother who takes an active role in nurturing the children, participating in their education, and meeting their children's daily needs.

. . . .

22.8   The father said things that were unkind or demeaning. . . .

22.9   The father made belittling and condescending statements about the mother's Native American ancestry, including about her father. He criticized the mother's parenting methods. He criticized the mother's choices in decorating the baby nursery. He criticized how much time the mother needed to recover from child birth. The mother felt the father was condescending to her. His comments hurt her self-esteem. She felt the father unilaterally made parenting decisions. Rather than engage in conflict, the mother acquiesced and withdrew.

22.10  At the time of separation, the father withheld the children from the mother without good cause. During the pendency of this case, he obtained two ex parte restraining orders prohibiting the mother's contact with the children. Both restraining orders terminated at the return hearing. At the second restraining order hearing, the father was found to have acted in bad faith. The evidence shows the father has a history of abusive use of conflict.

. . . .

22.21  . . . Both parents are subject to restrictions found in RCW 26.09.191. . . . [I]t appears the father's abusive use of conflict has not lessened during this litigation. At trial, he could not bring himself to acknowledge the mother loves her children.

CP at 351, 353.

The findings of fact support the trial court's reasons for finding that Mr. Kienow uses conflict in a way that may cause serious damage to the children.

In section 4 of the plan, the court identified the limitations it was imposing as follows:

**4. Limitations on a parent**

**No limitations despite reasons apply to** _DEVIN KIENOW_ *(explain why there are no limitations on a parent even though there are reasons for limitations checked in **3.a. or 3.b.** above)*: RCW 26.09.191 does not require limitations for a finding of abusive use of conflict. The court adopts a substantially equal parenting time schedule in order to facilitate a relationship with both parents.

**The following limits or conditions apply to** *(parent's name)*: TERESA DITTENTHOLER KIENOW *(check all that apply)*:

Other limitations or conditions during parenting time *(specify)*: Joint decision making is prohibited by RCW 26.09.191 if a history of domestic violence is found. The mother is restricted from joint decision making. The mother's acts of domestic violence did not result in grievous bodily harm or fear of such harm. There have been no credible allegations of domestic violence incidents after this case was filed. It appears the mother will no longer engage in acts of domestic violence.

Both parents are subject to restrictions found in RCW 26.09.191. The court finds an equal parenting plan is in the best interests of the children so they can have a balanced opportunity to develop their relationship with each parent.

When the children are with you, you are responsible for them. You can make day-to-day decisions for the children when they are with you, including decisions about safety and emergency health care. Major decisions must be made as follows:

**a. Who can make major decisions about the children?**

| Type of Major Decision | Joint (parents make these decisions together) | Limited (only the parent named below has authority to make these decisions) |
|---|---|---|
| School / Educational | [ ] | [X] *(Name):* DEVIN KIENOW, subject to paragraph 14.9. |
| Health care (not emergency) | [ ] | [X] *(Name):* DEVIN KIENOW |
| Other: | [ ] | [ ] *(Name):* |
| Other: | [ ] | [ ] *(Name):* |

CP at 356-57.

The trial court made several factual findings relevant to its reasoning that "an equal parenting plan is in the best interests of the children so they can have a balanced

22

opportunity to develop their relationship with each parent." CP at 357. Being

unchallenged, they are verities on appeal:

22.11 In 2018, the court ordered a temporary schedule where the children alternated residential time with each parent every week. This plan has been followed for 3 ½ years. The court does not draw any presumptions from the provisions of the parties' temporary parenting plan. RCW 26.09.191(5).

. . . .

22.14 Dr. Whitmer testified that both parents are good people who have the ability to love and care for their children effectively. He did not have any concerns that either parent had an unsafe home environment, or that either parent was at risk for abusing or neglecting the children.

. . . .

22.16 Dr. Whitmer concluded the children have adjusted well to the weekly alternating schedule. The children had been alternating weekly residential time between the parents' homes for almost two years. Dr. Whitmer stated the schedule seemed fair to [D.G]. Dr. Whitmer concluded the 50/50 schedule is as good a parenting plan as any other plan would be.

22.17 The children have a strong, stable, loving relationship with each parent. They enjoy their time with each parent. During their respective time with each parent, they enjoy fun, nurturing activities that deepen their bond with the parent and build lasting family memories.

22.18 The parents have equally assumed the parenting functions described in RCW 26.09.004 (2). The father was a stay at home parent while the parties lived together and attended to the children's daily needs while the mother was at work. The mother attended to daily needs when she was not working and took greater responsibility for [D.G.]'s education by initiating contact with his teacher and volunteering at the school. Both parents provided financial support for the children. When the parents separated, they accepted equal responsibility for the children's needs.

23

. . . .

22.20 Alternating residential time between each parent for brief and substantially equal intervals of time is in the children's best interest. It allows each parent to equally build on the bond they have already developed with their children. The court acknowledges the father's early role as the primary parent, but the central statutory factor is the child's current relationship with each parent rather than a parent's former role in the family. The mother's relationship with the children deepened post separation. An equal time plan seems fair to the child who is old enough to have a reasoned and independent preference. It allows the parents to disengage from each other and reduce their conflict but remain fully connected to their children.

CP at 352-53.

Mr. Kienow does not demonstrate that the trial court applied the RCW 26.09.191 restrictions too leniently to Ms. Dittentholer. RCW 26.09.191(2)(a) states the general proposition that a parent's residential time "shall be limited" based on a finding that the parent engaged in a "history of acts of domestic violence." But under RCW 26.09.191(2)(n), a trial court has discretion not to impose residential restrictions where it finds that the conduct is unlikely to recur or did not have an impact on the child. *In re Parenting & Support of C.A.S.*, __ Wn. App. 2d __, 522 P.3d 75 (2022). The trial court made those findings here.

The same discretion does not apply to RCW 26.09.191(1)'s prohibition of "require[d] mutual decision-making" when a parent had a history of domestic violence. *See id.* The trial court complied; the parenting plan does not "require mutual decision-making" on any issue. Mr. Kienow appears to be complaining about the plan's provision

that Ms. Dittentholer "can make day-to-day decisions for the children when they are with [her], including decisions about safety and emergency health care." CP at 357. But RCW 26.09.184(5)(a) and (b) provide that "[r]egardless of the allocation of decision-making in the parenting plan, either parent may make emergency decisions affecting the health or safety of the child," and, "Each parent may make decisions regarding the day-to-day care and control of the child while the child is residing with that parent." Mr. Kienow's only other complaint about decision-making is the court's own decision about the children's schooling, to which he separately assigned error and which is addressed below.

Given the manner in which the trial court applied the RCW 26.09.191 limitations on Ms. Dittentholer, we conclude that the necessities of the case do not require us to entertain her request for affirmative relief from the restrictions under RAP 2.4(a)(2).

Mr. Kienow does not demonstrate that the trial court "erred when it assigned RCW 26.09.191 restrictions against [him]." Corrected Br. of Appellant at 2. As already addressed, the finding that he engaged in abusive use of conflict is supported by substantial evidence. Section 4 of the plan states that notwithstanding its finding, the court imposed no limitations on Mr. Kienow. *See* CP at 356 ("No limitations despite reasons apply to DEVIN KIENOW (*explain why* . . . ): RCW 26.09.191 does not require limitations for a finding of abusive use of conflict.").

C.      Alleged error in applying RCW 26.09.187(3)(a) factors

Mr. Kienow next contends that contrary to statute, the trial court was not guided

by the factors set forth in RCW 26.09.187(3)(a)(i)-(v) and (vii).[8]  He only discusses

factors (i), (iii), (v) and (vii), however.  Corrected Br. of Appellant at 37-47.  He ignores

findings of fact by the court that address the factors, choosing instead to reargue the

evidence.

Factor (i) is "[t]he relative strength, nature, and stability of the child's relationship

with each parent."  Unchallenged findings 22.2, 22.3, 22.4, 22.11, 22.14, 22.16, 22.17,

22.18, and 22.20 are all relevant to this factor and demonstrate that it was considered.

Factor (iii) is "[e]ach parent's past and potential for future performance of

parenting functions as defined in RCW 26.09.004(3), including whether a parent has

taken greater responsibility for performing parenting functions related to the daily needs

of the child."  All of the unchallenged findings relevant to factor (i) are relevant to factor

(iii) and demonstrate that the latter factor was considered.

Factor (v) is "[t]he child's relationship with siblings and with other significant

adults, as well as the child's involvement with his or her physical surroundings, school,

---

[8] Mr. Kienow also makes a passing argument that the trial court "should have set
this parenting plan from the beginning using [the Yakima Superior Court local]
guidelines."  Corrected Br. of Appellant at 45.  As Ms. Dittentholer points out, however,
local rules state only that when implementing parenting plans, the court "may" consider
local guidelines.  LFLR 6.

or other significant activities." Unchallenged findings 22.5, 22.11, 22.13, 22.17, and 22.19 are relevant to the factor and demonstrate that it was considered.

Factor (vii) requires the court to consider "[e]ach parent's employment schedule, and shall make accommodations consistent with those schedules." Mr. Kienow misapprehends this as a factor that favors him as a spouse who has a flexible schedule and works from home. What the factor requires, however, is that the court arrive at a residential schedule that accommodates both parents' employment schedules to the extent possible. Relevant to this factor is unchallenged finding 22.11, that the alternate week schedule has been followed for 3½ years. Mr. Kienow does not demonstrate that the parenting plan conflicts with his or Ms. Dittentholer's employment schedule in a way that was not considered by the court.

D.  The trial court did not violate RCW 26.09.191 by itself deciding that continuing at St. Joseph Marquette was in the children's best interest

At trial, Ms. Dittentholer testified that she preferred that the children continue to attend St. Joseph Marquette. Mr. Kienow testified that when D.G. began attending Catholic school it had been a "50/50" decision. RP at 123. By the time of trial, though, he had made it clear that going forward he preferred the children attend public school. RP at 663.

The trial court ordered that the children "be enrolled and attend St. Joseph Marquette Catholic School until they complete 8th grade," and "[i]f the children are

27

unable to attend St. Joseph, they may be enrolled in the West Valley School District."

CP at 364. In its child support order, the court provided that the parents would share the

education cost based on their proportionate share of income from the child support

worksheets, which is 60.6 percent for Ms. Dittentholer and 39.4 percent for Mr. Kienow.

The trial court made the following unchallenged factual findings about the

children's schooling and emotional health, which are verities on appeal:

> 22.5 The parents agreed as a couple that [D.G.] would attend St. Joseph
> Marquette Catholic school after preschool. The extended family
> supported this decision, and the paternal grandfather gifted money to
> use for private school tuition. [D.G.] has attended the same school
> since kindergarten. It is in [D.G.]'s best interest to complete
> elementary school within the same educational institution, and it is
> in the children's best interests to attend the same school together.
>
> . . . .
>
> 22.15 Dr. Whitmer testified the children suffer from the parents' anger
> toward each other and their poor communication. [D.G.], in
> particular, is at risk of serious damage to his psychological
> development because he internalizes self-derogatory thoughts and
> emotions and blames himself for the parents' conflict.
>
> . . . .
>
> 22.22 . . . The parents agreed during their marriage that it was in [D.G.]'s
> best interest to attend private school. It is in the children's best
> interest to continue their elementary education through 8th grade in
> the same private school.

CP at 351-52.

Mr. Kienow raises two objections on appeal to the children's school enrollment

provision: first, that the court "stunted [his] required sole decision-making ability,"

28

Corrected Br. of Appellant at 48, by ordering schooling that Ms. Dittentholer wanted but he did not; and second, that under *State ex rel. J.V.G. v. Van Guilder*, 137 Wn. App. 417, 428, 154 P.3d 243 (2007), a parent should not be ordered to pay for private school absent a showing of special circumstances, or if they cannot afford it—and he allegedly cannot afford it.

Given the finding of Ms. Dittentholer's history of domestic violence, the parenting plan shall not require mutual decision-making. But nothing in chapter 26.09 RCW provides that the domestic violence finding requires that Mr. Kienow be given "sole decision-making ability" to the exclusion of the trial court. The objectives of the permanent parenting plan are not only to set forth the authority and responsibilities of each parent with respect to the child consistent with the criteria in RCW 26.09.187 and .191, but also to "[m]aintain the child's emotional stability" and "otherwise protect the best interests of the child consistent with RCW 26.09.002." RCW 26.09.184(1)(b), (g). RCW 26.09.002 provides that "[i]n any proceeding between parents under this chapter, the best interests of the child shall be the standard by which the court determines and allocates the parties' parental responsibilities." The trial court had the authority to make the education decision in the best interests of the children.

The only authority Mr. Kienow cites as depriving the court of the discretion to order continued attendance at a private school is *J.V.G.* In that case, this court reversed and remanded a support modification decision on account of the trial court's failure to

consider the needs of the father's four other children from a second marriage. Mr.

Kienow argues that like the father in *J.V.G.*, he presented evidence that he could not

afford for D.G. and D.H. to continue attending St. Joseph Marquette. But most of his

relevant citations to the record, while addressing the paternal grandfather's gifts toward

tuition, do not address whether Mr. Kienow and Ms. Dittentholer can afford the tuition

cost.[9] His single citation to evidence about his ability to afford private school is to his

August 2020 objection to D.H. attending St. Joseph Marquette's *preschool*, which D.G.

had not attended. Corrected Br. of Appellant at 48 (citing CP at 237). This case is also

distinguishable from *J.V.G.* in that the trial court's school enrollment provision has a

public school option "[i]f the children are unable to attend St. Joseph." CP at 364.

 *J.V.G.* does discuss Washington cases that hold that "a noncustodial parent should

not be obligated to pay for private school when acceptable public schools are available

unless there is a 'showing of special circumstances.'" 137 Wn. App. at 428 (quoting *In

re Marriage of Stern*, 57 Wn. App. 707, 720, 789 P.2d 807 (1990)). Mr. Kienow did not

raise *J.V.G.* or the "special circumstances" requirement below, so the trial court had no

reason to address special circumstances in its findings. While the policies behind RAP

2.5(a) would support refusing to review this alleged error, it turns out that among the

special circumstances discussed in *J.V.G.* are circumstances the court did find here: that

---

[9] *See* Corrected Br. of Appellant at 48, and the citations to CP at 95, 100, 351
(Finding of Fact 22.5), and RP at 123.

the decision to start D.G. in private school was an agreed decision, and the children have historically attended St. Joseph Marquette. *See* 137 Wn. App. at 428. No abuse of discretion is shown.

III.     MR. KIENOW DOES NOT DEMONSTRATE THAT INSUFFICIENT EVIDENCE SUPPORTS THE TRIAL COURT'S FINDING THAT MS. DITTENTHOLER WAS NOT INTRANSIGENT

Finally, Mr. Kienow contends the trial court erred by failing to award him attorney fees based on intransigence. He claims that Ms. Dittentholer intransigently commenced and pursued litigation in the tribal court. "Intransigence" includes foot-dragging, obstruction, and forcing another party to come to court to enforce clear legal rights. *Dalton M, LLC v. N. Cascade Tr. Servs., Inc.*, 20 Wn. App. 2d 914, 948, 504 P.3d 834, *review granted*, 200 Wn.2d 1016, 520 P.3d 969, 504 P.3d 834 (2022). Whether intransigent behavior occurred during litigation is a factual inquiry. *Wixom v. Wixom*, 190 Wn. App. 719, 725, 360 P.3d 960 (2015).

Ms. Dittentholer's petition for dissolution filed in the tribal court is in our record. In it, she accurately disclosed that neither of her children had lived on an Indian reservation in the prior five years. She acknowledged that Washington was the children's home state. She filed in tribal court believing her children might be eligible for enrollment in the Yakama Nation, pursued that issue, and on learning that the children were not eligible for enrollment, conceded the superior court's jurisdiction over the parenting issues.

31

As a threshold matter, Mr. Kienow has not provided a record on appeal from which we could possibly determine that Ms. Dittentholer was intransigent in the tribal court. We have been provided with only limited, selective tribal court submissions. Most notably, we have been provided with only Mr. Kienow's briefing in those proceedings, not Ms. Dittentholer's. The tribal courts have a complete history of the proceedings and both sides' submissions. If Ms. Dittentholer was intransigent, Mr. Kienow can direct his request for fees and costs to the tribal courts.

Apart from our lacking sufficient information, once the tribal court ruled in Ms. Dittentholer's favor and the superior court was not initially persuaded to assert jurisdiction itself, it was not "intransigent" for Ms. Dittentholer to accept and rely on favorable decision-making by the courts. We are not in a position to say that the tribal court *was* wrong in initially concluding that it had, or might have, concurrent jurisdiction. Even if we were, to shift attorney fees and costs to Ms. Dittentholer solely because it turns out a lower court was wrong would upend the American Rule, which "recognizes that the uncertainty of litigation should not result in penalizing one for prosecuting or defending a lawsuit." *Dalton M*, 20 Wn. App. 2d at 945 (citing *Fleischmann Distilling Corp. v. Maier Brewing Co.*, 386 U.S. 714, 718, 87 S. Ct. 1404, 18 L. Ed. 2d 475 (1967)).

Intransigence might be shown if the legal necessity for proceeding in state court rather than in tribal court was clear. But we note the cautionary introduction to the New Mexico Supreme Court's decision in *Garcia v. Gutierrez*:

> There are occasions, and this is one, when this Court can give no definitive answer to the increasingly complex jurisdictional disputes between state and tribal courts. Given its plenary authority over Indian matters, Congress could provide such answers, but it has not. We do our best to fill the void.

> In this case—a divorce and custody dispute between an Indian father and a non-Indian mother whose children are enrolled members of the Pojoaque Pueblo—state and tribal courts have entered conflicting decrees. Regrettably, complete resolution of that conflict lies beyond our reach.

> What we can do, however, is conclude that the state court does have jurisdiction. The tribal court—given the importance of the Pueblo's children to its culture and its future—likely has jurisdiction; and neither is exclusive of the other.

147 N.M. 105, 107, 217 P.3d 591 (2009). Again, Ms. Dittentholer was operating on the belief that because her children were ¼ Indian, even if not ¼ Yakama, they were eligible for enrollment. Just as Judge Tutsch concluded she had insufficient information to determine whether the tribal court had concurrent jurisdiction over some issues, we are unpersuaded on the limited record before us that exclusive state court jurisdiction was clear—particularly before the children's eligibility for enrollment was decided.

The trial court made a factual finding that Ms. Dittentholer did not engage in intransigent conduct. Mr. Kienow fails to demonstrate that insufficient evidence supports that finding.

IV.     ATTORNEY FEES ON APPEAL

Mr. Kienow requests an award of reasonable attorney fees and costs on appeal. He relies on RAP 18.1 and Ms. Dittentholer's alleged intransigence. We find no intransigence on the part of Ms. Dittentholer. The request is denied.

No. 38319-9-III
*In re Marriage of Kienow*

Affirmed.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to RCW

2.06.040.

_____
Siddoway, C.J.

WE CONCUR:

_____
Fearing, J.

_____
Lawrence-Berrey, J.